IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Capital Resorts Group, LLC d/b/a Capital Vacations, a Delaware limited liability company, | ) Civil Action No.: 9:25-cv-13124-BHH ) ) |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES** ) **AND INJUNCTIVE RELIEF** ) **(Jury Trial Demanded)** |
| v. | ) ) |
| The Stonegate Firm, LLC, CP Online Ventures, LLC, Bradley Post, Adam Colbert, Stonegate Law, LLC, and Dennis Donovan, ESQ., | ) ) ) ) |
| Defendants. | ) ) |

Plaintiff CAPITAL RESORTS GROUP, LLC d/b/a CAPITAL VACATIONS ("Capital Vacations"), through undersigned counsel and pursuant to the applicable Federal Rules of Civil Procedure, hereby files this Complaint for Damages and Injunctive Relief against Defendants THE STONEGATE FIRM, LLC; CP ONLINE VENTURES, LLC ( together, the "Stonegate Firm"); BRADLEY POST ("Post"); ADAM COLBERT ("Colbert") (the Stonegate Firm, Post, and Colbert, together, the "Marketing Defendants"); STONEGATE LAW, LLC ("Stonegate Law"); and DENNIS DONOVAN ("Donovan") (Stonegate Law and Donovan, together, the "Legal Defendants") (Marketing Defendants and Legal Defendants, collectively, "Defendants") and state as follows:

## I.    INTRODUCTION

1.    The Marketing Defendants operate a fake law firm that charges consumers exorbitant fees in exchange for illusory services.

2.    The Stonegate Firm represents to consumers that it will reduce or eliminate legal obligations that consumers owe to timeshare developers through the rendition of legal services.

3.      Despite its name, the Stonegate Firm is not a law firm.

4.      Neither Post nor Colbert are attorneys.

5.      Stonegate Firm's websites, https://stonegatefirm.com/ and https://timeshareexit.co/, falsely suggest that the Marketing Defendants have the ability to provide legal services, thereby justifying exorbitant fees charged to unsuspecting consumers.

6.      As further deception, Stonegate Firm's website utilizes fake, AI-generated, photographs of purported attorneys.

7.      The Marketing Defendants deceive consumers into paying for services that the Stonegate Firm knows it cannot and does not provide.

8.      The Stonegate Firm has no actual service of its own and no means to deliver its advertised services.

9.      Instead of providing the advertised services, and in an effort to legitimize its scheme, the Marketing Defendants utilize the name of one or more licensed attorneys who they pay directly for their participation in the scheme.

10.     Post and Colbert, individually, created the scheme at-issue in this matter and first utilized other lawyers to give the appearance of providing the advertised services.

11.     Thereafter, Post and Colbert partnered with the Legal Defendants and created The Stonegate Firm, LLC to match Stonegate Law's name.

12.     Stonegate Firm, which was created after the inception of the scheme, is the mere instrumentality and alter ego of Post and Colbert, who have directed the scheme both before and after the creation of Stonegate Firm and Stonegate Law.

13.     The choice to utilize these similar names, the Stonegate Firm and Stonegate Law, deliberately blurs the lines between the two entities and is inherently deceptive as it falsely justifies the fees paid to Stonegate Firm for legal services they do not, and cannot, provide.

14.     In the course of their deception, and through communications with consumers, the Defendants interfere, without justification, with the contractual and business relationships between Capital Vacations and Capital Vacations' customers.

15.     Both Capital Vacations and consumers are harmed by the Defendants' practices.

## II.     PARTIES, JURISDICTION, AND VENUE

### A.     <u>The Plaintiff</u>

16.     Plaintiff, CAPITAL RESORTS GROUP, LLC d/b/a CAPITAL VACATIONS is a Delaware limited liability company with its principal place of business located in South Carolina.

17.     Plaintiff's sole member is CV Borrower, LLC ("CV Borrower"), a Delaware limited liability company with its principal place of business located in South Carolina. CV Borrower's sole member is CV Holdings, LLC ("CV Holdings"), a Delaware limited liability company with its principal place of business located in South Carolina. CV Holdings sole member is Capital Vacations, LLC, a Delaware limited liability company with its principal place of business located in South Carolina. Capital Vacations, LLC's members consist of limited liability companies, a profit-sharing plan, and an investment account. The members of the limited liability companies, profit-sharing plan, and investment account are all individuals or a family trust, with one exception where a limited liability company is the member and a family trust is the member of that limited liability company. All of the individual members of these sub-members of Capital Vacations reside and are domiciled in South Carolina, Florida, Missouri, California, and Massachusetts. The two family trusts have trustees that reside and are domiciled in South Carolina. Plaintiff is, therefore, a citizen of South Carolina, Florida, Missouri, California, and Massachusetts.

**B.      The Defendants**

18.      The Stonegate Firm, LLC is a limited liability company organized under the laws of Wyoming with a corporate headquarters at 1309 Coffeen Ave, Suite 1200, Sheridan, Wyoming, 82801 and regional headquarters at 624 S. Boston Ave, 1st Floor, Suite 100, Tulsa, OK 74119 and 4450 Belden Village, Suite 503, Canton, OH 44718.

19.      The Stonegate Firm, LLC was formed in 2024.

20.      The Stonegate Firm, LLC is not a law firm.

21.      CP Online Ventures, LLC is a limited liability company organized under the laws of Oklahoma with its registered agent, Brad Post, at 9343 S Gary Ave., Tulsa, OK 74137.

22.      Post is an individual and citizen of the State of Oklahoma.

23.      Post is not a licensed attorney and is not admitted to practice law in any jurisdiction.

24.      Colbert is an individual and citizen of the State of Colorado.

25.      Colbert is not a licensed attorney and is not admitted to practice law in any jurisdiction.

26.      Stonegate Law is organized under the laws of New Jersey with a principal place of business as 4450 Belden Village Ave. Suite 503, Canton, OH 44718.

27.      Donovan is an individual and citizen of the State of Ohio.

28.      Donovan is an attorney licensed to practice law only in the State of New Jersey.

**C.      Subject Matter Jurisdiction**

29.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as it asserts a federal question under the Lanham Act.

30.      This Court has subject matter jurisdiction over state law claims brought herein pursuant to 28 U.S.C. § 1367 as the Court has supplemental jurisdiction over such claims as they

are so related to the Lanham Act causes of action that they form part of the same case or controversy under Article III of the United States Constitution.

**D.**     **Personal Jurisdiction**

31.     This Court has personal jurisdiction over the Defendants for the following reasons:

a.     Defendants' actions, as more fully described herein, are directed at consumers across the country, including consumers in South Carolina;

b.     Defendants operate websites that are freely accessible from South Carolina and target consumers in South Carolina, which involves, *inter alia*, the repeated transmission of files over the Internet in, to, and out of South Carolina;

c.     Certain timeshare owners targeted by the Defendants that have timeshare contracts with Capital Vacations are South Carolina residents;

d.     Capital Vacations is headquartered in South Carolina and markets, sells, and/or manages over a dozen resorts in South Carolina including in Hilton Head Island, SC;

e.     Defendants specifically target Capital Vacation properties in South Carolina including in Hilton Head Island, SC:

[…]

Our Hilton Head Island timeshare cancellation company provides crystal clear communication throughout your timeshare exit proceedings. We don't stop fighting for you until you're satisfied with the outcome.

About Stonegate Firm →

[…]

## Hilton Head Island, SC Timeshare Exit Firm

We help residents of Hilton Head Island, South Carolina cancel their unwanted timeshares. Click below to find out if your timeshare is eligible for cancellation.

Check Eligibility Now!

f.    Defendants make representations related to South Carolina law in relation to properties located in Hilton Head Island, SC:

### How To Cancel a Timeshare In Hilton Head Island, South Carolina

South Carolina Law Says How Long You Get to Cancel (Rescind) a Timeshare Purchase

g.    Defendants committed acts that caused injury to Capital Vacations businesses whose principal place of business is in South Carolina;

h.    Stonegate Firm, Stonegate Law, and Donovan send correspondence to Capital Vacations located in South Carolina on behalf of consumers including those located in South Carolina;

i.    Colbert and Post conspired with Legal Defendants to send correspondence to Capital Vacations located in South Carolina on behalf of consumers including those located in South Carolina;

j.    Colbert, Post, and Donovan advertise the provision of legal services to South Carolina consumers, including those who maintain customer relationships with Capital Vacations;

- 6 -

k.  Colbert and Post directed Donovan to send correspondence to Capital Vacations located in South Carolina;

l.  The Defendants regularly solicit business in South Carolina and are engaged in a persistent course of conduct in this State which targets consumers and Capital Vacations, all located in this State;

m.  Colbert and Post individually engaged in tortious conduct that targeted and caused harm to Capital Vacations in South Carolina; and

n.  Defendants engaged in substantial and not isolated activity in South Carolina.

**E.  Venue**

32.  Venue is proper in South Carolina pursuant to 28 U.S.C. §1391 because, as described herein, a substantial part of the events giving rise to Capital Vacations' claims occurred in South Carolina, and because the Stonegate Firm does business relating to the events alleged herein in Hilton Head Island, South Carolina. Moreover, South Carolina has a general policy interest in protecting residents harmed by violations of South Carolina law.

**F.  Conditions Precedent**

33.  All conditions precedent to the bringing and maintenance of this action have been performed, were waived, would be futile if attempted, or have otherwise been satisfied or occurred.

**III.  ALLEGATIONS OF FACT**

**A.  Capital Vacations**

34.  Capital Vacations markets, sells, and/or manages more than 200 vacation destinations throughout the world that customers can book by using Capital Points sold by Capital Vacations and its affiliates, including over a dozen resorts in South Carolina.

35.     As part of its business, Capital Vacations enters into written agreements (the "Purchase and Security Agreements") with consumers who purchase timeshare interests from Capital Vacations ("CV Owner(s)").

36.     Pursuant to the terms of the Purchase and Security Agreements, CV Owners also become "Member Beneficiaries" or "members" in the Capital Vacation Club, which provides the Member Beneficiaries/members with a certain number of "Capital Points" that can be utilized to use and occupy the accommodations and facilities within the Capital Vacations Club.

37.     Pursuant to the Purchase and Security Agreements, CV Owners agree to pay an amount certain for the timeshare interest.

38.     CV Owners also agree as part of the Purchase and Security Agreements to be responsible for other obligations.

39.     If a CV Owner obtains financing for purchase of the timeshare interest, the CV Owner may also execute a promissory note (the "Note") (the Purchase and Security Agreements and Notes, if applicable, the "Timeshare Contracts").

40.     The Timeshare Contracts control the benefits and obligations of vacation ownership and the relationship between Capital Vacations and the CV Owners, including, but not limited to, payment obligations.

41.     The Timeshare Contracts are legal documents.

42.     Legal obligations owed by CV Owners to Capital Vacations pursuant to the Timeshare Contracts, inclusive of payment obligations, can only be amended through (a) voluntary agreement of all parties, or (b) judicial order.

**B.     <u>Stonegate Firm Origins</u>**

43.     Post and Colbert's marketing to timeshare owners for illusory legal services predates the formation of the Stonegate Firm.

44.     Post and Colbert's marketing scheme promised the ability to terminate consumer debt to timeshare developers through the use of an attorney and legal services.

45.     Post and Colbert solicited consumers by promising legal services in a manner similar to the practices described in Paragraphs 50 through 60 herein.

46.     An attorney affiliated in some manner with Post and Colbert sent letters to timeshare developers including Capital Vacations.

47.     Prior to organizing Stonegate Firm, Post and Colbert located Donovan to assume the figure head-role of the "attorney" that would provide services to customers.

48.     Post and Colbert, who individually controlled the scheme, were then able to transfer customers to Donovan for purposes of legal letters being sent to Capital Vacations under Donovan's letterhead.

49.     To facilitate the conspiracy, Post and Colbert caused the marketing operation and Legal Defendants to operate under the same or similar name.

**C.     Defendants' Advertising Process**

50.     Stonegate Firm advertises its services through a variety of ways including both verbal and non-verbal mediums.

51.     Post and Colbert created and, each individually, direct and control the Stonegate Firm, including without limitation its advertising practices.

52.     Post and Colbert, individually and directly, oversee Stonegate Firm employees in the execution of Stonegate Firm's advertising practices.

53.     As to the non-verbal advertising, Stonegate Firm engages in, at least, the following (the "Non-Verbal Advertising Practices"):

     a.     A website maintained by Stonegate Firm with the URL of https://stonegatefirm.com/;

      b.     A website maintained by Stonegate Firm with the URL of https://timeshareexit.co/;

      c.     Social-media website profiles; and/or

      d.     Other digital and online advertising.

54.     The Non-Verbal Advertising Practices direct consumers to call the Stonegate Firm by telephone or to fill out and submit a web-based form to the Stonegate Firm.

55.     Upon information and belief, after a consumer contacts Stonegate Firm, Stonegate Firm engages in oral advertising that includes, but may not be limited to, telephonic sales presentations (the "Verbal Sales Presentations").

56.     Upon information and belief, the Non-Verbal Advertising Practices funnel consumers to the Verbal Sales Presentations.

57.     The Verbal Sales Presentations, the apex of a multi-layered advertising campaign, are an integral part of Stonegate Firm's advertising campaign and are widely disseminated to prospective Stonegate Firm customers including the CV Owners.

58.     The Non-Verbal Advertising Practices and Verbal Sales Presentations together form an organized sales campaign (the "Advertising Practices").

59.     Stonegate Firm's Advertising Practices target timeshare-owning consumers in multiple states across the United States of America including those located in South Carolina.

60.     Stonegate Firm's Advertising Practices constitute commercial speech as they (a) propose a commercial transaction between Stonegate Firm and consumers, (b) contain reference to a specific service (the purported timeshare exit services), and (c) Stonegate Firm has an economic motivation for distributing the advertising so as to garner payment from consumers.

### D.     <u>Defendants' Advertising Content</u>

61.     Stonegate Firm's Advertising Practices target timeshare owners regardless of which timeshare developer such owners contracted with.

62.     Stonegate Firm's Advertising Practices are substantially the same as to CV Owners and timeshare-owning consumers who own timeshares through contracts with timeshare developers other than Capital Vacations.

63.     The service that Stonegate Firm advertises is one to reduce or eliminate the debt consumers owe to timeshare developers.

64.     Within the Advertising Practices, Stonegate Firm represents and/or suggests that it will provide customers with a legal service including, without limitation, through use of the following statements (the "Legal Services Statements"):

    a.  Inclusion of the word "Firm" in its name:



    b.  Stonegate Firm holds itself out as a "The Only Timeshare Exit Firm with Co-Branded Law Firm":



    c.    Statement that consumers get "*REAL* legal representation via Stonegate Law…":

> You get *REAL* legal representation via Stonegate Law when it matters most.

    d.    Statement that Stonegate Firm "protects" consumers' "rights and ensures your resort will negotiate in good faith":

> This protects your rights and ensures your resort will negotiate in good faith.

    e.    Statement that "Stonegate Firm and Stonegate Law are ready to fight on [consumers'] behalf":

> If you're ready to end your timeshare ownership, Stonegate Firm and Stonegate Law are ready to fight on your behalf.

    f.    Statements that Stonegate Firm provides "Timeshare Cancellation, Legal Representation"; "Real Legal Representation When it Matters Most"; and "Legal & Permanent Contract Cancellation":

## Timeshare Cancellation, Legal Representation



**Real Legal Representation When It Matters Most**



**Legal & Permanent Contract Cancellation**



**Powerful Testimonials From Timeshare Owners**

g. Statements that Stonegate Firm provides "Real Legal Assistance From Our In-House Attorney":



**Real Legal Assistance From Our In-House Attorney**

h. Statement that "With Stonegate Firm and Stonegate Law, You Will Get The Help Of Experienced Consumer Protection Attorneys":

# With Stonegate Firm and Stonegate Law, You Will Get The Help Of Experienced Consumer Protection Attorneys

i. Statement that "we don't send 'boilerplate' letters" and "we certainly don't quit after the first round of negotiations":

**Our process is 100% unique.** We don't walk you down the path to foreclosure, **we don't send "boilerplate" letters**, and we certainly don't quit after the first round of negotiations.

j.   Statement that "Attorneys actually negotiate an amicable release from your timeshare" which is "why Stonegate Firm is a formidable advocate for consumers in the timeshare industry":

That's right: **Attorneys actually negotiate** an amicable release from your timeshare. This is why Stonegate Firm is **a formidable advocate for consumers** in the timeshare industry.

k.   Statement that Stonegate Firm works "with real lawyers to deliver results":

# We Work With Real Lawyers To Deliver Results

l.   Characterization of Donovan as "Chief Legal Officer":



m.   Statement that Donovan is "Licensed To Practice Law", a "Consumer Protection Attorney", a "Timeshare Exit Attorney", and a "[t]imeshare relief attorney" who is "responsible for developing [Stonegate Firm's] highly effective timeshare cancellation strategies":

## Our Chief Legal Officer And General Counsel



**Dennis Donovan, Esq.**

Consumer Protection Attorney

✔ LICENSED TO PRACTICE LAW
✔ 20+ YEARS EXPERIENCE IN CONSUMER DEBT RELIEF
✔ POWERFUL TIMESHARE RELIEF STRATEGY
✔ EXPERT IN CONSUMER CREDIT

**Dennis Donovan, Esq. Is Stonegate Firm's Chief Legal Officer & Timeshare Exit Attorney**

Timeshare relief attorney Dennis Donovan is a long-time defender of consumer rights. He has spent nearly two decades focusing on protecting the rights of his clients.

Dennis has joined The Stonegate Firm as Chief Legal Officer and is responsible for developing our highly effective timeshare cancellation strategies.

If your timeshare developer lied, misrepresented facts, pressured you, or coerced you into purchasing your timeshare, Dennis is the attorney you want overseeing your timeshare exit strategy.

His expertise includes handling direct disputes with timeshare developers and negotiating on behalf of clients.

Dennis and his team provide ethical and transparent services to consumers that want to cancel their timeshares.

n. Statement that, where needed, the "assigned attorney at Stonegate Law, LLC" will "consult with counsel in your state to ensure the most effective strategy":

STATE SPECIFIC REPRESENTATION: In the event that state specific legal representation is required in your exit strategy, your assigned attorney at Stonegate Law, LLC will consult with counsel in your state to ensure the most effective strategy. In all cases, an attorney employed by Stonegate Law will provide personalized legal representation, negotiate on your behalf, and leverage federal consumer protection law to achieve the best possible outcome in your case.

o. Statement that "[i]n all cases, an attorney employed by Stonegate Law will provide personalized legal representation, negotiate on your behalf, and leverage federal consumer protection law to achieve the best possible outcome in your case":

STATE SPECIFIC REPRESENTATION: In the event that state specific legal representation is required in your exit strategy, your assigned attorney at Stonegate Law, LLC will consult with counsel in your state to ensure the most effective strategy. In all cases, an attorney employed by Stonegate Law will provide personalized legal representation, negotiate on your behalf, and leverage federal consumer protection law to achieve the best possible outcome in your case.

p. Statement that "Clients of Stonegate Firm, LLC receive personalized legal representation from Stonegate Law":

Clients of Stonegate Firm, LLC receive personalized legal representation from Stonegate Law.

q.  Reference to Stonegate Firm customers as "client[s]" and the work Stonegate Firm provides for such customers as "case[s]";

r.  Reference to Stonegate Firm's "legal department" and "Legal Team";

s.  A "guarantee[]" that "clients receive top-tier legal assistance tailored to their specific needs":

> His commitment to upholding the highest standards of legal ethics and professionalism guarantees that clients receive top-tier legal assistance tailored to their specific needs.

t.  A prompt for prospective customers to "REQUEST A CASE REVIEW";

u.  Identification of multiple individuals as attorneys or possessing legal education or training through use of the titles "Attorney"; "General Counsel"; "Chief Legal Officer"; "Senior Legal Associate", "Legal Associate", and "paralegal", along with use of abbreviations "Esq.", and "J.D.";

v.  Identification of multiple employees as "Case Managers";

w.  Use of fictious images supposedly portraying Stonegate Firm employees generated by artificial-intelligence based on prompts designed to create images of "attorneys" or "lawyers":

| | |
|---|---|
| <br>**Mark Kunkel**<br>**Vice President** | File Name: "Firefly-portrait-of-48-year-old-white-man-lawyer-with-short-beard-and-a-man-bun.-4929" |

| | |
|---|---|
|  **Jennifer Williams** Lead Investigator | File Name: "Firefly-A-portrait-of-a-35-year-old-female-attorney-The-background-should-be-an-office-use-85mm-le-1" |
|  **Jasmine Martinez** Senior Legal Associate | File Name: "Firefly-30-year-old-redhead-Woman-attorney-with-blonde-hair-12048" |
|  **Donald Grant** Vice President | File Name: "Firefly-black-male-attorney-40-years-old-professional-portrait-12048" |



File Name: "Firefly-A-portrait-of-a-45-year-old-male-attorney-in-a-suit-The-background-should-be-an-office-use-1"

**Rob Sindorf**
**Intake Officer**

    x.  Publishing of an on-line article titled "What's the Role of a Consumer Protection Attorney in Timeshare Exit":

# What's the Role of a Consumer Protection Attorney in Timeshare Exit

July 12, 2024 | Stonegate Firm

    y.  Publishing of an on-line article titled "The Importance of State Laws in Timeshare Cancellation":

# The Importance of State Laws in Timeshare Cancellation

May 23, 2024 | Stonegate Firm

    z.  Use of images associated with the practice of law; and

aa.  Reference to "case assessment"; "case review"; and "case proposal".

65.    The Advertising Practices described in Paragraphs 50 through 64, collectively, the "False and/or Misleading Advertisements".

E.    **Defendants' Agreements**

66.    Stonegate Firm enters into agreements (the "Stonegate Agreements") with CV Owners based on Stonegate Firm's False and/or Misleading Advertisements and for the purpose of reducing or eliminating debt owed to Capital Vacations pursuant to the Timeshare Contracts.

67.    The Stonegate Agreements guarantee CV Owners that Stonegate Firm will cancel their Timeshare Contracts.

68.    The Stonegate Agreements reiterate that CV Owners will receive legal services from an attorney.

69.    Upon information and belief, the service fee that Stonegate Firm charges to CV Owners does not reflect the amount of work that Stonegate Firm will perform for its customers.

F.    **Marketing Defendants' Advertising Is False and/or Misleading**

70.    Stonegate Firm's False and/or Misleading Advertisements misrepresent inherent and material characteristics of its service.

71.    The Legal Services Statements are false and/or misleading for the reasons described in Paragraphs 76 through 92 herein.

72.    Upon information and belief, Post and Colbert actively, knowingly, and individually direct Stonegate Firm's False and/or Misleading Advertisements, as well as the false, misleading, and deceptive statements made to CV Owners by Stonegate Firm employees. Post and Colbert direct, control, ratify, authorize, personally participate in and/or are the moving forces behind the False and/or Misleading Advertisements.

73.    Upon information and belief, Post and Colbert are personally responsible for developing the content of Stonegate Firm's False and/or Misleading Advertisements.

74.     Stonegate Firm's False and/or Misleading Advertisements create the false impression that Stonegate Firm and or the Legal Defendants are capable of providing, and do provide, legal services that will reduce or cancel the CV Owners' debt associated with the Timeshare Contracts.

75.     Neither Marketing Defendants nor Legal Defendants provide the debt reduction or cancellation through legal services described in the False and/or Misleading Advertisements.

*1.     Marketing Defendants Fail to Deliver Promised Services*

76.     Marketing Defendants do not offer the legal services described in the False and/or Misleading Advertisements as:

    a.     Stonegate Firm cannot provide any legal services because it is not a law firm;

    b.     Post cannot provide any legal services because he is not a lawyer; and

    c.     Colbert cannot provide any legal services because he is not a lawyer.

77.     Instead of providing the services described in the False and/or Misleading Advertisements, Stonegate Firm:

    a.     Provides template correspondence to CV Owners asserting boilerplate allegations and demands for cancellation of the CV Owners' Timeshare Contracts for CV Owners to send to Capital Vacations (the "Template Letters");

    b.     Sends boilerplate letters to Capital Vacations asserting that Stonegate Firm is "providing oversight and consulting" or similar non-legal services to the CV Owners in regard to the CV Owners' Timeshare Contracts and often with reference to prior Template Letters (the "Consulting Letters"); and

c. Causes letters to be sent in the name of the Legal Defendants supposedly on the CV Owners' behalf to Capital Vacations suggesting that the Legal Defendants are the CV Owners legal representatives (the "Demand Letters").

78. The Template Letters assembled for each of the CV Owners are generally the same.

79. The Consulting Letters assembled for each of the CV Owners are generally the same.

80. The Demand Letters assembled for each of the CV Owners are generally the same.

81. Marketing Defendants take no legally meaningful steps to bring about the debt reduction or cancellation through legal services as advertised in the False and/or Misleading Advertisements.

2. *Legal Defendants Fail to Deliver Promised Services*

82. Legal Defendants do not offer the legal services described in the False and/or Misleading Advertisements as:

a. The Legal Defendants do not form an attorney-client relationship with any CV Owners;

b. The Legal Defendants do not represent the CV Owners in formal litigation or arbitration;

c. The Legal Defendants do not initiate or pursue any legal action against Capital Vacations in any court;

d. The Legal Defendants do not represent the CV Owners in mediation involving a third-party neutral mediator;

e.   The Legal Defendants do not negotiate on behalf of the CV Owners with Capital Vacations;

f.   Donovan is only licensed to practice law in New Jersey and, therefore, is legally prohibited from rendering legal advice or acting as an attorney in any capacity to many CV Owners; and

g.   Upon information and belief, the Legal Defendants do not meaningfully consider the unique legal circumstances of each of the CV Owners.

83.    Indeed, upon information and belief, only a portion of the fees that CV Owners pay to the Marketing Defendants is shared with the Legal Defendants.

84.    Instead of providing the services described in the False and/or Misleading Advertisements, Demand Letters bearing Legal Defendants' names are sent to Capital Vacations.

85.    The Demand Letters employ vague language in describing the Legal Defendants' relationship to the CV Owners making it unclear whether Stonegate Law is acting as the CV Owners' attorney.  Specifically:

a.   The Demand Letters do not explicitly say that the Legal Defendants are in a formal attorney-client relationship with the CV Owners; and

b.   The Demand Letters use phrases like (a) Stonegate Law is "providing continued oversight and consulting" in regard to CV Owner's prior complaints, (b) Stonegate Law "has been retained to provide legal oversight and consumer protection consulting" on behalf of CV Owners; or (c) that Stonegate Law "has been retained in a consulting and legal oversight capacity."

86.    Upon information and belief, the Demand Letters are purposefully vague as to the status of any attorney-client relationship between the Legal Defendants and the CV Owners.

87. The Demand Letters generally ask for the same relief regardless of the specific CV Owner.

88. The Demand Letters are insufficient to relieve CV Owners of any financial obligation related to their timeshare interest.

89. Accordingly, Stonegate Firm (which is not a law firm) collects exorbitant legal fees of which only a portion are shared with an attorney licensed to practice in only one state, who himself fails to acknowledge that he has any attorney-client relationship with the consumers who have paid Stonegate Firm for legal representation and who takes no meaningful action to relieve the CV Owners of any debts associated with the Timeshare Contracts.

90. As a result, the CV Owners never receive the legal services described in the False and/or Misleading Advertisements from the Marketing Defendants or the Legal Defendants.

91. Ultimately, the Defendants collective efforts to deliver the advertised services are substantially limited to sending boilerplate correspondence which hold no legal significance.

92. Any reduction or cancellation of debt provided to CV Owners is provided by Capital Vacations itself rather than any service that Defendants advertised and/or performed.

**G.     Interference with Customer Relationships**

93. Defendants' practices described above separate Capital Vacations from the CV Owners who are the parties to the Timeshare Contracts, and in privity with each other.

94. As a result of their interaction with CV Owners, either through the Advertising Practices or after CV Owners sign up for the Defendants' services, Defendants' actions cause CV Owners to cease payments owed to Capital Vacations pursuant to the Timeshare Contracts.

95. The goal of Defendants' purported services is to reduce (potentially to zero) the financial obligation that consumers owe to Capital Vacations.

96.    As a result of the CV Owners ceasing payment to Capital Vacations, Capital Vacations suffers damages and CV Owners suffer injury including, but not limited to, the inability to utilize the benefits of their timeshare ownership and a decrease in their credit score.

97.    The Demand Letters create the false impression that CV Owners are represented by legal counsel.

98.    Based on the ambiguous description of Legal Defendants' relationship with CV Owners, Capital Vacations is forced to treat such Legal Defendants as the CV Owners' legal representatives and engage with them through legal counsel.

99.    Practically, this separates Capital Vacations from the CV Owners and precludes Capital Vacations from continuing in their normal relationship and precludes Capital Vacations from executing any further contracts with the CV Owners.

100.    Defendants have engaged in the above-described conduct with numerous consumers over an extended period of time.

## COUNT I

### <u>False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)</u>
**(Against Marketing Defendants)**

101.    Capital Vacations adopts and realleges paragraphs 1 through 100 above as if fully set forth herein.

102.    This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

103.    The Marketing Defendants made the False and/or Misleading Advertisements about their own purported service.

104.    Marketing Defendants, through the False and/or Misleading Advertisements, willfully, deliberately, and egregiously made false or misleading statements of fact in their commercial advertisements and intended to mislead consumers. The False and/or Misleading

Advertisements incorporated herein were literally false, either on their face or by necessary implication, as set forth herein, or were materially misleading.

105.    The False and/or Misleading Advertisements caused consumers to falsely believe that the Stonegate Firm offers a legitimate product or service.

106.    The False and/or Misleading Advertisements were conveyed, among other ways, through the Advertising Practices conducted by the Stonegate Firm as part of an overall advertising and marketing plan.

107.    Marketing Defendants' False and/or Misleading Advertisements were commercial speech made by a defendant acting in competition to Capital Vacations by trying to interfere with Capital Vacations' business relationships for the Marketing Defendants' own financial gain, for the purpose of influencing consumers to retain the Stonegate Firm's services, and were disseminated sufficiently to the timeshare owning public to constitute advertising or promotion within the timeshare industry.

108.    Post is personally and individually liable for the actions of Stonegate Firm as he is the architect of the overall scheme, directs the activities of Stonegate Firm, and has control over Stonegate Firm.

109.    Colbert is personally and individually liable for the actions of Stonegate Firm as he is the architect of the overall scheme, directs the activities of Stonegate Firm, and has control over Stonegate Firm.

110.    Marketing Defendants' False and/or Misleading Advertisements either deceived or had the capacity to deceive a substantial segment of the consuming public.

111.    Marketing Defendants' deception is material in that it is likely to influence the consumers' decisions whether to retain Stonegate Firm's services, or to cease making payments to Capital Vacations.

112.    Marketing Defendants' False and/or Misleading Advertisements materially misrepresent their services and what they do for consumers which is designed to trick CV Owners into retaining the Marketing Defendants, thereby diverting payments from Capital Vacations to the Marketing Defendants.

113.    The Marketing Defendants' False and/or Misleading Advertisements cause consumers to utilize the Marketing Defendants' false exit services, which directly results in the CV Owners ceasing payment on their Timeshare Contracts at the Marketing Defendants' instruction.

114.    Without the Marketing Defendants' False and/or Misleading Advertisements, the CV Owners would have continued to make payments on their Timeshare Contracts.

115.    Marketing Defendants' advertised services affect interstate commerce.

116.    Marketing Defendants placed the False and/or Misleading Advertisements in interstate commerce.

117.    Marketing Defendants are operating as competitors to Capital Vacations. Once a CV Owner enters into an agreement with the Marketing Defendants, the sole purpose of that agreement is to cause that CV Owner to withdraw his or her business from Capital Vacations, effectively converting that individual from a CV Owner to a customer of the Marketing Defendants.

118.    As a result of the Marketing Defendants' False and/or Misleading Advertisements, Capital Vacations suffered and continues to suffer injury,

119.    As a result of the Marketing Defendants' False and/or Misleading Advertisements, Capital Vacations suffered injury in that timeshare owners ceased payment to Capital Vacations because of the advertising.

120.    As a result of the Marketing Defendants' False and/or Misleading Advertisements, Capital Vacations is likely to continue to suffer injury.

121.    Pursuant to 15 U.S.C. § 1117, Capital Vacations is entitled to recover (i) its actual damages, (ii) Marketing Defendants' profits resulting from their false advertising to CV Owners, (iii) attorneys fees as this is an exceptional case under 15 U.S.C. § 1117(a), and (iv) the costs of the action.

122.    Pursuant to 15 U.S.C. § 1116, Capital Vacations seeks an injunction upon such terms as the Court may deem reasonable to prevent Marketing Defendants' further violation of 15 U.S.C. 1125(a).

## COUNT II

### Contributory False Advertising
### (Against Legal Defendants)

123.    Capital Vacations adopts and realleges paragraphs 1 through 100 above as if fully set forth herein

124.    This is an action for a contributory violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

125.    The Marketing Defendants directly engaged in false advertising in violation of the Lanham Act.

126.    The Marketing Defendants willfully, deliberately, and egregiously made false or misleading statements of fact in their commercial advertisements and intended to mislead

consumers. The statements described above and incorporated herein were literally false, either on their face or by necessary implication, as set forth herein.

127.  Capital Vacations has been and continues to be injured as a result of the Marketing Defendants' false and/or misleading statements.

128.  The Legal Defendants have contributed and continue to contribute to the Marketing Defendants' false and/or misleading advertising by knowingly inducing or causing the conduct, or by materially participating in it.

129.  The Legal Defendants explicitly or implicitly cause, induce, encourage, and/or participate in the Marketing Defendants' false advertising because they:

       a.  Permit the Marketing Defendants to use their name and Donovan's status as a licensed attorney as a reason for CV Owners to retain Marketing Defendants for the advertised services; and

       b.  Knowingly accept the CV Owners as customers or clients who were deceived by the Marketing Defendants' false and/or misleading advertising.

130.  Without the Legal Defendants' willingness to (a) permit the Marketing Defendants to reference them in the false and/or misleading advertising, and (b) acceptance of those consumers as customers or clients, the Marketing Defendants could not advertise in the manner described in this Complaint.

131.  The Legal Defendants' acceptance of CV Owners as customers from Marketing Defendants legitimizes the Marketing Defendants' false and/or misleading advertising.

132.  The Legal Defendants provide a dispositive factor to the Marketing Defendants' false and/or misleading advertisements.

133. The Marketing Defendants' false and/or misleading advertisements are public, serious, and widespread; therefore, the Legal Defendants have full knowledge of such advertising and condone it.

134. More than that, the Legal Defendants each individually financially gain from the false advertisements in the form of referrals and fee-splitting with the Marketing Defendants.

135. In other words, each of the Legal Defendants derive revenue from the consumers solicited through the Marketing Defendants' false and/or misleading advertising.

136. Pursuant to 15 U.S.C. § 1117, Capital Vacations is entitled to recover (i) its actual damages; (ii) the Legal Defendants' profits resulting from the Marketing Defendants' false advertising to CV Owners; (iii) attorneys fees as this is an exceptional case under 15 U.S.C. § 1117(a), and (iv) the costs of the action

137. Pursuant to 15 U.S.C. § 1116, Capital Vacations seeks an injunction upon such terms as the Court may deem reasonable to prevent Legal Defendants' further violation of 15 U.S.C. 1125(a).

## COUNT III

### Tortious Interference
**(Against Marketing Defendants)**

138. Capital Vacations adopts and realleges paragraphs 1 through 100 above as if fully set forth herein.

139. This is a cause of action for tortious interference with a contract and prospective contractual relations.

140. Capital Vacations has business and contractual relationships with the CV Owners as documented in the Timeshare Contracts.

141.    Capital Vacations has an expectation that it may enter into further contracts with the CV Owners.

142.    Marketing Defendants have actual, constructive, and/or specific knowledge of the business and contractual relationships between Capital Vacations and the CV Owners as the very fact that Capital Vacations has such relationship with the CV Owners is the basis upon which Marketing Defendants themselves sought to establish a relationship with the CV Owners. Indeed, if it were not for the existence of the business and contractual relationships between Capital Vacations and the CV Owners, Stonegate Firm would have no reason to solicit the CV Owners.

143.    The service that Marketing Defendants purport to offer is conditioned on the existence of a business or contractual relationship between Capital Vacations and CV Owners in the first instance.

144.    Marketing Defendants intentionally procured the CV Owners' breach of their contract with Capital Vacations by causing them to breach obligations owed pursuant to the Timeshare Contracts

145.    Further, Marketing Defendants intentionally interfered with potential future contracts between Capital Vacations and the CV Owners by separating CV Owners and Capital Vacations through the Template Letters, Consulting Letters, and Demand Letters.

146.    If CV Owners knew the truth about Marketing Defendants' illusory services or about how Defendants' actions would adversely impact them, they would not pay exorbitant fees to Marketing Defendants nor breach the Timeshare Contracts.

147.    Marketing Defendants have utilized improper and/or illegal methods to interfere with Capital Vacations' relations with the CV Owners.

148.    Marketing Defendants' actions were done with improper motive and not in good faith, but rather were done with the knowledge and predominant purpose to injure Capital Vacations or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from Marketing Defendants' actions and without reasonable grounds for Marketing Defendants to believe that their actions were justified and proper.

149.    Marketing Defendants interfered with Capital Vacations' relations with the CV Owners through improper methods including, but not necessarily limited to, soliciting the CV Owners through false and misleading statements.

150.    Marketing Defendants have no economic interest in the relationships between Capital Vacations and the CV Owners or in the Timeshare Contracts.

151.    Marketing Defendants did not and do not have any justification or privilege in procuring the breach of such contractual relationships, as Marketing Defendants are strangers to the contractual relationships between Capital Vacations and its CV Owners, and their interference with Capital Vacations' business is willful and malicious.

152.    The Marketing Defendants are not law firms and have no attorney-client relationships with CV Owners; therefore, they are not privileged to interfere under the attorney-client privilege.

153.    The Marketing Defendants are not agents of the CV Owners because the CV Owners do not control their actions. Rather, the Marketing Defendants control and guide the "exit" strategy as a so-called "service" that they provide to the CV Owners.

154.    Further, the Marketing Defendants are motivated by personal gain and not by the interests of the CV Owners.

155.    The Marketing Defendants are not privileged to interfere as an agent of the CV Owners.

156.    Capital Vacations suffered prejudice and injury from the Marketing Defendants' interference in that:

        a.    As a direct and proximate result of Marketing Defendants' misconduct, CV Owners have terminated their relationships with Capital Vacations in that they have, at least, terminated, or have baselessly sought to terminate via Marketing Defendants, their contractual relationships with Capital Vacations before the expiration of the terms of those contracts;

        b.    As a direct and proximate result of the foregoing, Capital Vacations suffered injury in the form of unpaid loan balances and other costs related to the recovery of delinquent timeshare interests; and

        c.    As a direct and proximate result of Marketing Defendants' intentional misconduct, Capital Vacations has been unable to enter into subsequent transactions with those same CV Owners.

157.    Marketing Defendants' ongoing conduct has caused, and if not permanently enjoined, will continue to cause, irreparable harm to Capital Vacations due to the disruption of customer and other contractual relations; therefore, Capital Vacations does not have an adequate remedy at law to fully remedy the harm caused by Defendants to Capital Vacations.

158.    Plaintiff is entitled to (i) actual damages for Marketing Defendants' interference, and (ii) injunctive relief upon such terms as the Court may deem reasonable, to prevent further misconduct by Defendants.

## COUNT IV

### Civil Conspiracy
### (Against All Defendants)

159.    Capital Vacations adopts and realleges paragraphs 1 through 100 above as if fully set forth herein.

160.    Defendants are parties to a civil conspiracy.

161.    Defendants, acting in concert, have engaged in an unlawful scheme to take advantage of timeshare owners and to cause Capital Vacations and its business millions of dollars in actual damages.

162.    Defendants combined to commit various unlawful acts including to:

   a.   Induce CV Owners to breach their contractual agreements;

   b.   Deny Capital Vacations the ability to enter new contracts with such CV Owners; and

   c.   Misrepresent the nature of services advertised to CV Owners.

163.    Defendants each had knowledge of the others' intent to accomplish by concerted action unlawful purposes and/or lawful purposes by unlawful means.

164.    Defendants conspired to do an unlawful act to cause Capital Vacations harm. Defendants acted in concert with a common design, scheme, or plan to bring about a desired result and/or accomplish a preconceived plan for financial gain to the detriment of Capital Vacations through unlawful and/or illegal means of interfering causing CV Owners to breach their Timeshare Contracts with Capital Vacations or interfering with Plaintiff's ability to enter into new contracts with CV Owners.

165.    Defendants committed or engaged in overt acts in furtherance of their unlawful conspiracy to interfere with Capital Vacations' prospective economic relations or to induce Capital Vacations' customers to breach their contractual agreements.

166.    Defendants each performed one or more overt actions in furtherance of their conspiracy as set forth above and below:

a.    Post and Colbert provided Stonegate Firm and Stonegate Law with certain customers retained from third-party timeshare exit companies;

b.    The Marketing Defendants engaged in False and/or Misleading Advertisements designed to lure the CV Owners across the country into obtaining their services;

c.    The Marketing Defendants caused the CV Owners not to pay on their Timeshare Contracts owed to Capital Vacations in South Carolina;

d.    The Legal Defendants provided Marketing Defendants their name and status as attorneys to make the Marketing Defendants' business appear to be legitimate;

e.    The Marketing Defendants sent boilerplate correspondence to Capital Vacations located in South Carolina;

f.    The Legal Defendants sent formulaic—but legally meaningless—Demand Letters to Capital Vacations in South Carolina to further perpetuate the appearance that CV Owners were receiving services advertised in the False and/or Misleading Advertisements and to provide a basis to solicit additional customers; and

g.    Post and Colbert recruited Legal Defendants to serve in the attorney role as described herein for purposes of sending the aforementioned Demand Letters to Capital Vacations in South Carolina necessary to provide the appearance of legitimacy of the entire scheme.

167.    The Marketing Defendants could not have accomplished their part in the scheme without the Legal Defendants, and vice versa.

168.    All Defendants benefited from the conspiracy.

169.    As a direct and proximate result of Defendants' civil conspiracy, CV Owners have unlawfully terminated, or have sought to terminate, their Timeshare Contracts with Capital Vacations before the expiration of the terms of those contracts, and Capital Vacations relationships with CV Owners have been injured.

170.    Each of the Defendants have a personal stake in the conspiracy activities.

171.    Post and Colbert each have a personal stake in the conspiracy activities of the Stonegate Firm; they each individually financially benefit from the conspiracy, separate and apart from the motives of Stonegate Firm. Specifically, because Stonegate Firm is a closely held company, Post and Colbert have personal motives and stakes in conspiring with the Legal Defendants to financially benefit from the concerted tortious interference.

172.    Donovan has a personal stake in the conspiracy activities of the Stonegate Law as he individually financially benefits from the conspiracy, separate and apart from the motives of Stonegate Law. Specifically, because he is the owner of Stonegate Law, Donovan has personal motive and stakes in conspiring with the other Defendants to financially benefit from the concerted tortious interference.

173.    As a direct and proximate result of the foregoing, Capital Vacations suffered damages.

174.    Defendants acted with specific intent to harm Capital Vacations and with malice in taking these actions.

175.    Defendants are jointly and severally liable to Capital Vacations for Damages.

176.     Plaintiff is entitled to (i) actual damages for Defendants' actions, and (ii) injunctive relief upon such terms as the Court may deem reasonable, to prevent further misconduct by Defendants.

**COUNT V**

**<u>Violation of South Carolina Unfair Trade Practices Act</u>**
***S.C. Code § 39-5-10 et. seq.***
**(Against All Defendants)**

177.     Capital Vacations adopts and realleges paragraphs 1 through 100 above as if fully set forth herein.

178.     This is a cause of action under the South Carolina Unfair Trade Practices Act ("SCUTPA"), *S.C. Code § 39-5-10 et. seq.*, against the Marketing Defendants and Legal Defendants.

179.     This cause of action is separate and apart from the causes of action premised upon Defendants' Lanham Act violations. It is based on Defendants' business practices as a whole, which are deceptive and unfair.

180.     Capital Vacations is headquartered in South Carolina and markets, sells, and/or manages over a dozen resorts in South Carolina including in Hilton Head Island, SC. Capital Vacations' South Carolina resorts are integral components of Capital Vacations' multi-site vacation club in which the CV Owners who are deceived to become Defendants' customers are members. The loss of CV Owners directly and adversely affects the Club and accordingly all of its composite resorts, including those in South Carolina.

181.     The Defendants are all "persons" as defined by S.C. Code §39-5-10(a).

182.    Defendants are engaged in "trade" or "commerce" as those terms are defined by S.C. Code §39-5-10(b) as Defendants engage in the advertising and offering for sale of services to reduce or eliminate a consumer's debt to timeshare developers like Capital Vacations.

183.    Defendants purposefully insert themselves into the same marketplace in which Capital Vacations operates—the timeshare industry consisting of existing timeshare owners.

184.    The Marketing Defendants' false advertising is directed to Capital Vacations' existing customers.

185.    Marketing Defendants advertise to Capital Vacations' existing customer base, including those in South Carolina, in order to persuade them to engage Defendants.

186.    Defendants together are engaged in certain unfair or deceptive practices in the conduct of trade or commerce including that they:

    a.    Lure CV Owners into procuring Defendants' illusory services with false advertising including the False and/or Misleading Advertisements;

    b.    Lure CV Owners into procuring Defendants' illusory services under the false pretense that Defendants provide a legal service when, in fact, they are incapable of providing such service or do not provide such service;

    c.    Use misrepresentations to convince CV Owners to pay substantial fees to "exit" their Timeshare Contracts with Capital Vacations, when, in many instances, a lawful termination is only available to consumers directly from Capital Vacations,

    d.    Offer "guarantees" to CV Owners about their "exits," even though Defendants know that any such exits rely on Capital Vacations' assent and are thus never guaranteed; and

    e.     Offer services of an attorney who is only licensed to practice in one state to consumers located in multiple other states.

187.    Legal Defendants further engage in unfair or deceptive practices pursuant to S.C. Code § 39-5-39 in that through the Marketing Defendants, they advertise their services in a false, deceptive, or misleading manner through false impression that CV Owners will receive certain legal services when, in fact, no such services are provided, and through affiliation with the Marketing Defendants which creates an unreasonable expectation of results.

188.    Legal Defendants further engage in unfair or deceptive practices pursuant to S.C. Code § 39-5-39 in that through the Marketing Defendants, they create the false impression that they are licensed to practice law in South Carolina or any other state other than New Jersey, when in fact Donovan is only licensed to practice law in New Jersey.

189.    The Defendants' conduct violates state law prohibitions on the unlicensed practice of law and restrictions on attorney advertising.

190.    The conduct described in paragraphs 186 through 189 is hereinafter collectively referred to as the "Deceptive and Unfair Acts".

191.    The Deceptive and Unfair Acts are likely to mislead reasonably-acting CV Owners to their detriment.

192.    Defendants knew or should have known that the Deceptive and Unfair Acts was unfair competition and constitutes unfair and deceptive acts or practices.

193.    Defendants intended that the above conduct would induce another to rely and act on them, specifically, consumers such as CV Owners.

194.    Defendants' conduct offends established public policy, is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers and businesses alike.

195.    The Deceptive and Unfair Acts constitute unfair commercial practices, deception, fraud, false pretenses, misrepresentation and the known concealment and misrepresentation of material facts, all in violation of SCUTPA.

196.    The Deceptive and Unfair Acts have the potential for repetition in that the same kind of actions occur repeatedly due to the Defendants' procedures.

197.    Specifically, Marketing Defendants routinely send substantially the same Consulting Letters to Capital Vacations and Capital Vacations regularly receives substantially similar Demand Letters addressed from the Legal Defendants.

198.    Accordingly, upon information and belief, Defendants repeatedly engage in the same practices as to each CV Owners.

199.    The Deceptive and Unfair Acts affect the public interest as the Defendants repeatedly engage in the same procedures for multiple CV Owners.

200.    As a direct and proximate result of Defendants' Deceptive and Unfair Acts, CV Owners have been harmed and Capital Vacations has been damaged.

201.    Defendants' actions, including the Deceptive and Unfair Acts, have injured Capital Vacations in that losing members adversely impacts Capital Vacations' Club and its composite resorts including the more than a dozen located in South Carolina; Capital Vacations failed to receive outstanding loan payments it was entitled to receive from CV Owners; suffered costs associated with past due collection efforts and foreclosure proceedings; incurred maintenance fees on recovered inventory; incurred marketing costs for re-sale of recovered inventory; and lost opportunity to reengage with CV Owners so as to resolve issues without the taint of Defendants' interference.

202.   Defendants are continuing to engage in the false, unfair, and deceptive conduct described above, and there is therefore a strong likelihood that Capital Vacations will suffer irreparable harm on an ongoing basis, and any remedy at law for Defendants' perpetuation of the false, deceptive, and unfair conduct is inadequate.

203.   An injunction serves the public purpose.

204.   Pursuant to S.C. Code § 39-5-140, 15 U.S.C. § 1117, Capital Vacations is entitled to recover its (i) actual damages., (ii) attorneys fees, (iii) the costs of the action, and (iv) an injunction upon such terms as the Court may deem reasonable to prevent Defendants' further violation of SCUTPA.

## PRAYER FOR RELIEF

Capital Vacations respectfully requests the Court enter final judgment in their favor and against Defendants, jointly and severally, for:

a.   Actual Damages;

b.   Corrective advertising;

c.   Disgorgement of Defendants' profits;

d.   Together with interest thereon;

e.   An award of court costs;

f.   A determination that the instant civil action is an exceptional case and awarding Plaintiff its attorneys' fees under the Lanham Act;

g.   Entry of permanent injunctive relief against Defendants, as well as their agents, representatives, employees, affiliates, and those acting in active concert with them, prohibiting Defendants from publishing or contributing to any false and misleading statements in advertising; engaging in any

deceptive and/or unfair conduct; and engaging in any other improper acts described herein; and

h.    For such other and further relief as the Court deems appropriate.

Respectfully Submitted,

Dated: October 24, 2025

GORDON REES SCULLY MANSUKHANI LLP

By    *s/A. Victor Rawl, Jr.*
A. Victor Rawl, Jr. (Fed 06971)
E-mail: vrawl@grsm.com
Kerry K. Jardine (Fed 11921)
E-mail: kjardine@grsm.com
677 King Street, Suite 450
Charleston, SC 29403
Telephone: (843) 278-5900
*Attorneys for Plaintiff*