**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA**
Beaufort Division

| | |
|---|---|
| CAPITAL RESORTS GROUP, LLC d/b/a CAPITAL VACATIONS, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> THE STONEGATE FIRM, LLC, CP ONLINE VENTURES, LLC, BRADLEY POST, ADAM COLBERT, STONEGATE LAW, LLC, and DENNIS DONOVAN, ESQ., <br><br> Defendants. | Case No.: 9:25-cv-13124-BHH <br><br> **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS THE STONEGATE FIRM, LLC, STONEGATE LAW, LLC, AND DENNIS DONOVAN, ESQ.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

Plaintiff CAPITAL RESORTS GROUP, LLC d/b/a CAPITAL VACATIONS ("Capital Vacations" or "CV") responds in opposition to Defendants The Stonegate Firm, LLC ("Stonegate Firm"), Stonegate Law, LLC ("Stonegate Law") and Dennis Donovan, Esq.'s ("Donovan") (together, the "Moving Parties") *Motion to Dismiss Pursuant to Rule 12(b)(6)* (DE 24) ("Motion"). The Motion incorrectly claims that the Court should dismiss Capital Vacations' October 24, 2025 *Complaint for Damages and Injunctive Relief* (DE 1) (the "Complaint") and the claims asserted therein against the Moving Parties for failure to adequately state a claim upon which relief may be granted. Mot., p. 1; *see also Mem. in Supp. of the Defs. The Stonegate Firm, LLC, Stonegate Law, LLC, and Dennis Donovan, Esq.'s Mot. to Dism. Pursuant to Rule 12(b)(6)* (DE 24-1) (the "Mem."). Moving Parties, however, misstate the law and ask the Court to engage in a weighing of evidence that is not proper in the context of a motion to dismiss. The Motion is substantively and procedurally fatally flawed. The Court should deny the Motion and reject such premature efforts by the Moving Parties to escape the consequences of their misleading and improper business practices.

## I. BACKGROUND

Here, Capital Vacations has brought a five count Complaint against six defendants in connection with the Defendants' illusory offering of purported legal services and interference with Capital Vacations' business.

Specifically, the Complaint alleges claims for false advertising in violation of the Lanham Act, 15. U.S.C. § 1125(a)(1) (Count I), contributory false advertising also in violation of the Lanham Act (Count II), tortious interference (Count III), civil conspiracy (Count IV), and violation of the South Carolina Unfair Trade Practices Act, S.C. Code § 39-5-10, *et. seq.* ("SCUTPA") (Count V). While the Motion and accompanying memorandum do not distinguish between the Defendants or the arguments of the Moving Parties, the Complaint does not allege every claim against every defendant. Capital Vacations asserts Counts I and III against Stonegate Firm and co-Defendants Bradley Post ("Post"), Adam Colbert ("Colbert") and CP Online Ventures, LLC ("CP") (collectively, the "Marketing Defendants"). Compl., ¶¶ 101-122, 138-158. Capital Vacations asserts Count II against Donovan and Stonegate Law (together, the "Legal Defendants"). *Id.* at ¶¶ 123-137. Capital Vacations asserts only Counts IV and V against all the defendants. *Id.*, at ¶¶ 159-204. Notably, co-Defendants Post, Colbert, and CP do not join the instant motion or otherwise dispute the adequacy of the pleadings. *See* Mot., Mem.

Each of Capital Vacations' stated allegations reflect the unique roles that the Defendants collectively play in the conspiracy and purported business venture at-issue in this case. Together, the Defendants work in tandem to deceive the public through false advertising, which then, in turn, damages the commercial and contractual relationship between third-party consumers (timeshare owners) and Capital Vacations. Such scheme is commonly referred to as a "timeshare exit" business. In the end, Capital Vacations is financially harmed and brings the instant claims herein to thwart such ongoing misconduct and recover for such injuries. Through its pleading, Capital

Vacations have presented legally viable and valid claims, necessitating dismissal of the Motion in its entirety.

## II.     LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Dao Travels, LLC v. Charleston Black Cab Co.*, No. 2:14-CV-01967-PMD, 2015 WL 631137, at *3 (D.S.C. Feb. 13, 2015) (citing *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). "To be legally sufficient a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)). More specifically, "the complaint must demonstrate that the plaintiff's right to relief is more than a mere possibility, but it need not rise to the level of evincing a probability of success." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 (2007)).

When ruling on a Rule 12(b)(6) motion to dismiss, "the trial judge must accept as true all of the facts alleged in the plaintiff's complaint and construe all reasonable inferences in favor of the plaintiff." *Id.* (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 441 (4th Cir. 2011)). Furthermore, for purposes of a Rule 12(b)(6) motion, "a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference." *Capital Resorts Grp., LLC v. Wesley Fin. Grp., LLC*, No. 4:24-CV-03043-JDA, 2025 WL 1047421, at *3 (D.S.C. Apr. 7, 2025) (citing *Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31–32 (4th Cir. 1985)).

## III.     ARGUMENT

The Complaint adequately alleges all the claims asserted against the Moving Parties. Accordingly, the Court must deny the Motion.

**A.**     **<u>Lanham Act False Advertising Under 15.U.S.C. § 1125(a)</u>**

Count I of the Complaint adequately alleges a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), in connection with the Marketing Defendants' illusory offering of timeshare exit services that they do not actually provide.

The Lanham Act prohibits "false or misleading description of fact, or false or misleading representation of fact, which…in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]" 15 U.S.C. § 1125.  Thus, the prima facie elements of a false advertising claim under the Lanham Act are as follows:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 298–99 (4th Cir. 2017).  The Supreme Court of the United States has also determined that the Lanham Act's cause of action for false advertising extends to those—like Capital Vacations— "whose interests fall within the zone of interests protected by the law invoked[;]" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (quotation omitted); and "whose injuries are proximately caused by violations of the statute." *Id.* at 132.

Here, the Complaint adequately alleges, against Stonegate Firm and the other Marketing Defendants, each of the necessary elements for false advertising and includes allegations establishing Capital Vacations as a proper plaintiff under the Lanham Act.  Compl., ¶¶ 101-122. Moving Parties insufficiently challenge Capital Vacations' ability to pursue a claim under the

Lanham Act and also dispute the adequacy of allegations in regard to the first element of the claim.[1] Moving Defendants are mistaken and the Court should deny the Motion as to Count I of the Complaint.

### 1. *Capital Vacations is Entitled to Pursue a False Advertising Claim under the Lanham Act*

The Complaint's allegations describe a scheme and injury to Capital Vacations that Courts routinely determine to be within the scope of the Lanham Act. Capital Vacations' allegations fall squarely within the Lanham Act's "zone of interests" and Marketing Defendants' violations of that statute proximately cause Capital Vacations' injuries.

### a. The Alleged Claim Falls Within the Lanham Act's "Zone of Interests"

The Complaint alleges that the Marketing Defendants' actions caused injury to Capital Vacations' commercial sales. Compl., ¶¶ 94-96, 99, 111-114, 117-120. This places them within the bounds of the Lanham Act. Under the seminal *Lexmark* case, the Supreme Court has pronounced that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." 572 U.S. at 131-32.

Here, Capital Vacations does just that. Compl. ¶¶ 94–96, 99, 111–114, 117–120. Specifically, the Complaint alleges that the Marketing Defendants' false advertising "directly results in the CV Owners ceasing payment on the Timeshare Contracts at the Marketing Defendants' instruction[;]" Compl., at ¶ 113; that "[w]ithout the Marketing Defendants' False and/or Misleading Advertisements, the CV Owners would have continued to make payments on

---

[1] Moving Parties do not assert that the Complaint fails to adequately allege the elements of materiality, actual or likely deception, interstate commerce, or—explicitly—causation. *See Mem.* Indeed, as discussed herein, the Complaint does allege such elements. *See supra*, § III.A.3.

their Timeshare Contracts[;]" *id.*, at ¶ 114; and that "[a]s a result of the Marketing Defendants' False and/or Misleading Advertisements, Capital Vacations suffered and continues to suffer injury[.]" *Id.*, at ¶ 118.

These allegations are the exact type of harm that courts have repeatedly identified as satisfying the Lanham Act's zone of interests. In numerous instances, courts have found that allegations by timeshare developers akin to Capital Vacation's are proper where the plaintiff alleges that the defendant causes consumers to stop making payments owed to the plaintiff. For example, in W*yndham Vacation Ownership, Inc. v. Reed Hein & Assocs., LLC*, the court found that plaintiff adequately alleged standing where it claimed that it "lost sales and suffered injury to its reputation," explaining that such allegations are "precisely the sort of commercial interests that the Lanham Act seeks to safeguard." No. 6:18-cv-2171-GAP-DCI, 2019 WL 3934468, at *5 (M.D. Fla. Aug. 20, 2019). Similarly, in *Wyndham Vacation Ownership, Inc. v. Gallagher*, the court held that allegations that defendants published false advertisements "to lure Wyndham Owners into hiring [third-party exit companies], who then instructed said owners to stop making payments due to Wyndham under their timeshare contracts," adequately alleged an injury to Wyndham's commercial interests in sales sufficient to fall within the Lanham Act's zone of interests. No. 6:19-cv-476-GAP-EJK, 2019 WL 5458815, at *6 (M.D. Fla. Sept. 10, 2019); *see also Bluegreen Vacations Unlimited, Inc. v. Timeshare Lawyers P.A.*, No. 20-24681-CIV, 2023 WL 3198192, at *10 (S.D. Fla. May 2, 2023) (Finding that plaintiff timeshare developer's "commercial interests are injured in various ways when owners stop their payments" which is "is sufficient to bring [plaintiff's] injury within the zone of interests contemplated by the Act.); *Diamond Resorts Int'l, Inc. v. Reed Hein & Assocs.*, LLC, No. 2:17-cv-03007-APG-VCF, 2019 WL 6310717, at *6, 2019 U.S. Dist. LEXIS 205358, at *16 (D. Nev. Nov. 25, 2019) ("Diamond's

central allegation is that TET solicited Diamond customers with deceptive advertisements and then induced them to breach their contracts with Diamond, thereby alleging an injury to its commercial interest in sales and bringing Diamond's claim within the zone of interests protected by the Lanham Act.").

Accordingly, the Court should determine that Count I of the Complaint is properly within the Lanham Act's "zone of interests".

### b. The Complaint Alleges Proximate Cause

The Complaint makes clear that Marketing Defendants' violations of the Lanham Act proximately causes the complained-of injury. "[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133.

Here, the Complaint alleges injury flowing from the deceptive advertising to Capital Vacations. The Complaint alleges that the Marketing Defendants engage in advertising practices that suggest they will provide consumers with dogged legal representation so that the consumer is no longer obligated to make payment to timeshare developers like Capital Vacations; *id.*at ¶¶ 61-65; and that "[t]he goal" of the advertised services "is to reduce (potentially to zero) the financial obligation that consumers owe to Capital Vacations." Compl. at ¶ 95. Thus, the Complaint alleges that "through the Advertising Practices[,]" the "Defendants' actions cause CV Owners to cease payments owed to Capital Vacations pursuant to the Timeshare Contracts." *Id*., at ¶ 94. If not obvious, the Complaint continues to expressly state that "[a]s a result of CV Owners ceasing payment to Capital Vacations, Capital Vacations suffers damages…"; *id.* at ¶ 96; and that "[w]ithout the Marketing Defendants' False and/or Misleading Advertisements, the CV Owners would have continued to make payments on their Timeshare Contracts." *Id.* at ¶ 114. Thus,

7

notwithstanding the claims to the contrary, the Complaint alleges a close nexus between the false or misleading advertising and Capital Vacations' injury. *See* Compl., ¶¶ 94, 96.

Moreover, assertion by Moving Parties that Marketing Defendants are not competitors with Capital Vacations is factually false and a legal red-herring. Additional case law attendant to proximate causation upon which Moving Parties rely is also unavailing.

Factually, the Complaint plausibly alleges that Marketing Defendants are competitors with Capital Vacations by asserting that "the sole purpose" of Stonegate Firm's agreement with the owners "is to cause that CV Owner to withdraw his or her business from Capital Vacations, effectively converting that individual from a CV Owner to a customer of the Marketing Defendants." *Id.* at ¶ 117. If Marketing Defendants are successful in providing the services they advertise to consumers, such consumers will no longer be Capital Vacations' customers. *See id.* That is what a commercial competitor is. Separately, however, post-*Lexmark*, the Lanham Act extends to plaintiffs that are not direct competitors of a defendant. *Reed Hein*, 2019 WL 3934468, at *5 (Finding that "[c]ompetition is not required to bring a claim under the Lanham Act" and rejecting dismissal argument on such grounds); *Gallagher*, 2019 WL 5458815, at *7 (Same). Indeed, *Lexmark* itself stated that it is "a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect *only* the false-advertiser's direct competitors." 572 U.S. at 136 (emphasis original). Accordingly, the Moving Parties' argument on this point is unavailing.

As to additional proximate causation case law, Moving Parties cite to *Geomatrix, LLC v. NSF Intern.* to argue that Capital Vacations' pleading is too speculative and that Moving Parties' deceptive practices did not "directly cause timeshare defaults." Mem., p. 12-13. However, in *Geomatrix*, the court found that the plaintiff's allegations were speculative because the alleged

harm flowed indirectly from the independent decisions of state regulators, rather than directly from the defendants' conduct. 629 F. Supp. 3d 691, 709 (E.D. Mich. 2022). In that case, there was an "extended causal chain" between the defendant's conduct and the plaintiff's injury. *Id.* at 710.

By contrast, here, the Complaint alleges that Marketing Defendants themselves specifically targeted Capital Vacations' existing customers with false or misleading legal service advertisements and that such advertisement caused those customers to cease payments on their timeshare contracts. Compl. ¶¶ 53-65, 94, 96, 113, 114, 119. Moreover, the Complaint provides specific, non-conclusory allegations of causation, detailing how Defendants' advertising induced customer defaults, which, in turn, caused measurable damages to Capital Vacations. *Id.* Unlike the conclusory allegations in *Geomatrix*, which recited only boilerplate statements that the plaintiff suffered damages "as a direct and proximate result" of the defendants' misrepresentations, the Complaint here specifically connects Defendants' false advertising to Capital Vacation's injuries. *Id.;* Compare *Geomatrix,* 629 F. Supp. 3d at 709 ("Each count ends with an identical recitation that '[a]s a direct and proximate result of Defendants' [false and misleading claims], Geomatrix has been damaged … Such a description of the injury caused by Defendants' false advertisement/statements is clearly conclusory and insufficient to establish a viable claim.'"). Simply put, here, there is no "extended causal chain," but, rather a direct connection between the Marketing Defendants' actions and Capital Vacations' injury.

Thus, the Court should find that Capital Vacations satisfies the proximate cause requirement and may pursue its Lanham Act Claim.

> 2.     *The Complaint Adequately Alleges False or Misleading Statements*

The Complaint adequately alleges that Stonegate Firm made a materially false or misleading statement in satisfaction of the first element of a Lanham Act claim. In sum, the Complaint addresses the Marketing Defendants' advertising of illusory timeshare exit services.

Stonegate Firm, along with the Marketing Defendants, represent to consumers that they will provide such consumers with a service, i.e., cancellation of a timeshare through legal means, that they cannot and do not provide. Specifically, the Complaint describes—in detail—both the advertising process (Compl. ¶¶ 50-60) and the content (*Id.* ¶¶ 61-65) of that advertising.

These advertisements expressly promise that consumers will receive personalized legal assistance, negotiation with timeshare developers, and leverage of federal consumer protection law to achieve a reduction or elimination of debt. Compl. ¶¶ 63–64. The Complaint further demonstrates that Stonegate Firm's advertising creates the false impression that licensed attorneys—including Donovan as "Chief Legal Officer" and a "Consumer Protection Attorney"—personally handle clients' cases, provide legal representation, and guarantee individualized, top-tier legal outcomes. *Id.* ¶¶ 64(i)–(p). In reality, neither Stonegate Firm nor affiliated Legal Defendants provide these legal services. *Id.* ¶¶ 76-92, 94.

The Moving Parties challenge specific allegations in the Complaint. They assert that allegations related to Donovan's attorney licensure and role as Stonegate Firm's in-house counsel are either true or "moot". Mem., pp. 14-15. Moving Defendants completely miss the point. The Complaint's allegations related to Donovan illustrate the manner in which the advertising is false based on how Marketing Defendants portray Donovan's role. The Complaint alleges that the Stonegate Firm advertises to consumers that it will "provide customers with legal service[s]" to "eliminate the debt consumers owe to timeshare developers." Compl. ¶¶ 63–64. The Complaint further details that Stonegate Firm reinforces these promises by representing that Donovan and Stonegate Law will provide consumers with "personalized" and "experienced" legal services. *Id.* ¶¶ 47, 64(h), 64(p). However, Donovan holds a license in only one jurisdiction and the Stonegate Firm is not a law firm and does not employ other attorneys. *Id.* ¶¶ 3, 20, 28, 76, 82. It is self-

evident that admission to practice in one state does not grant an attorney the right to practice nationwide. Nor does naming an entity with the word "legal" make it a law firm.

These allegations demonstrate that the Defendants collectively lack the capacity to deliver the legal exit services promised in their advertising and why such advertising is false. *Id.* ¶ 76 (Marketing Defendants do not offer the service), *Id.* ¶82 (Legal Defendants do not offer the service). The Moving Parties' reference to certain instances where non-lawyers may perform "services that involve interaction with legal issues" has no relevance to this Motion. Mem., p. 15. The Complaint makes no allegations in regard to civil magistrates, state agencies, certified public accountants, or arresting officers. *See* Compl. Also, that non-lawyers may or may not address legal issues without "practicing law" in other circumstances has no bearing on whether the present advertising at issue here and promising an attorney-driven process is truthful when, ultimately, those purchasing such services will never receive the services of an attorney acting in such a capacity. This deficiency directly supports the Complaint's assertion that the advertising is false and misleading.

Second, the Moving Parties argue that a disclaimer on Stonegate Firm's website "negates" any confusion as to whether Stonegate Firm is a law firm. Mem., p. 14. Moving Parties go on to reference various portions of the Stonegate Firm website and suggest such statements "prevail over Capital's conclusory allegations…" *Id.* at pp. 14-15. Such reliance on the fine print in advertising is legally and factually misguided. Initially, there is nothing "conclusory" about the Complaint's allegations. To the contrary, the Complaint includes specific quotation and, in some instances, reproduction of the Stonegate Firm advertising. Compl., ¶ 64. Moreover, contradictory fine print does not save an advertiser like the Marketing Defendants from a Lanham Act claim. *See Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics*, 2015 WL 4002468, at *19 (S.D.N.Y. July

1, 2015) ("[A] footnote or disclaimer that purports to change the apparent meaning of the claims and render them literally truthful, but which is so inconspicuously located or in such fine print that readers tend to overlook it, will not remedy the misleading nature of the claims."); *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-CV-01280-JST, 2021 WL 11593043, at *11 (N.D. Cal. Aug. 16, 2021) (Presence of a disclaimer does not warrant dismissal of Lanham Act false advertising claim); *Asurion, LLC v. SquareTrade, Inc.*, 407 F. Supp. 3d 744, 749 (M.D. Tenn. 2019) ("[A] disclaimer that is unlikely to be read because of its print size or location will not remedy a misleading claim.").

Finally, "whether the Defendants' disclaimer effectively cures an otherwise misleading advertisement is a matter of fact, which is beyond the scope of a Rule 12(b)(6) motion to dismiss." *Lemberg Law, LLC v. eGeneration Mktg., Inc.*, 2020 WL 2813177, at *11 (D. Conn. May 29, 2020*); Sciele Pharma, Inc. v. Brookstone Pharm., LLC*, No. 1:09-CV-3283-JEC, 2010 WL 9098290, at *7 (N.D. Ga. June 23, 2010) ("The Court agrees with plaintiff that the disclaimer issue is more appropriately resolved on a motion for summary judgment or at trial"). Capital Vacations is confident that any fact-finder would see the overwhelming weight of the at-issue advertising as suggesting that consumers hiring Stonegate Firm would receive actual and personalized legal services notwithstanding the miniscule fine print that Moving Parties cite. Nevertheless, such determination must procedurally wait until a different and later stage of the case (which Capital Vacations eagerly awaits). *See id.*

Accordingly, the Complaint adequately pleads a misstatement in satisfaction of this element of the Lanham Act claim.

### 3.    *Remainder of Elements*

In addition to satisfying the first element of a Lanham Act false advertising claim, the Complaint adequately pleads the remaining elements, which Moving Defendants do not challenge.

To be clear, the Motion does not challenge the adequacy of the pleadings as to these elements, but Capital Vacations addresses same here in an abundance of caution.

First, the Complaint alleges that Defendants' false statements were material because they were likely to influence consumers' purchasing decisions. *Id.* ¶¶ 111-12. The Complaint specifically alleges that Defendants' misrepresentations concerning the legal services were designed to induce timeshare owners to retain Stonegate Firm's services and to cease making payments to Capital Vacations. *Id.* ¶¶ 111–114. Indeed, the Complaint alleges that consumers relied on these representations when deciding whether to continue performing under their timeshare contracts, and that, absent Defendants' false advertising, Capital Vacations Owners would have continued making payments to Capital Vacations. *Id.* ¶ 114.

Second, the Complaint alleges that Defendants' misrepresentations actually deceived, or at least had the tendency to deceive, a substantial segment of the consuming public. *Id.* ¶ 110. The Complaint alleges that Defendants disseminated the false advertisements widely to timeshare owners nationwide as part of an organized advertising campaign and that those advertisements caused consumers to believe Stonegate Firm offered a legitimate legal service capable of canceling their timeshare obligations. *Id.* ¶¶ 100, 105–107, 110. The Complaint further alleges that numerous consumers relied on these misrepresentations by retaining Stonegate Firm and ceasing payments on their timeshare contracts. *Id.* ¶¶ 113–114.

Third, the Complaint alleges that Defendants placed the false or misleading statements in interstate commerce. *Id.* ¶¶ 115-116. The Complaint expressly alleges that the Marketing Defendants' advertising practices targeted timeshare owners in multiple states and that the advertised services affected interstate commerce. *Id.* ¶¶ 59, 115–116. The Complaint further alleges that Marketing Defendants disseminated the false advertisements through websites, digital

media, and telephonic sales presentations as part of an overall nationwide marketing plan. *Id.* ¶¶ 50–60, 106.

Finally, for the reasons stated above, the Complaint satisfies the fifth element that Capital Vacations has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products. *See supra* § III.A.1(b).

**B.       Contributory False Advertising Claim Under the Lanham Act**

Count II of the Complaint adequately alleges a claim for contributory false advertising against the Legal Defendants. *See* Compl., ¶¶ 123-37. The Motion fails to offer any legal authority to suggest that contributory false advertising is not a viable cause of action. To the contrary, case law that Moving Parties cite themselves support the existence of such cause of action in this circuit. Mem., p. 17.

Notably, case law upon which the Motion relies stands for the proposition that such a cause of action is viable in the Fourth Circuit. Specifically, in *Thousand Oaks Barrel Co. v. Barrels*, the Court stated that "courts in this Circuit have applied the Eleventh Circuit's test for contributory liability in the false advertising context under section 1125(a)(1)." No. 121CV848LMBTCB, 2022 WL 3337798, at *9 (E.D. Va. July 11, 2022). Indeed, in that case the Court went as far as to find that "Plaintiff has sufficiently alleged contributory liability under the Lanham Act…" *Id.* Nowhere in the *Thousand Oaks* decision does the court state that the "statute does not expressly establish a claim for contributory false advertising, and the United States Supreme Court … [has] not recognized such a cause of action." *See* Mem., p.17. In addition to *Thousand Oaks*, courts in this circuit permit contributory false advertising claims and apply the test that the Eleventh Circuit articulated in *Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248 (11th Cir. 2015). *See e.g. ISK Biocides, Inc. v. Pallet Mach. Group Inc.*, No. 3:21-CV-386, 2022 WL 122923, at *7 (E.D. Va. Jan. 12, 2022) (Stating that "[t]his Court agrees with the Eleventh Circuit's conclusion:

the Lanham Act creates liability for contributory false advertising" and then "adopts the test announced in *Duty Free…*")*; SMD Software, Inc. v. EMove, Inc.*, No. 5:08-CV-403-FL, 2013 WL 12167730, at *9 (E.D.N.C. Apr. 30, 2013) ("Contributory false advertising under the Lanham Act is actionable"); *LStar Dev. Group, Inc. v. Vining*, No. 5:20-CV-184-FL, 2021 WL 4344891, at *6 (E.D.N.C. Sept. 23, 2021) *citing Duty Free*, 797 F.3d at 1277 (Finding that plaintiff adequately stated a claim for contributory false advertising).

Nevertheless, the Complaint adequately alleges the elements of such a cause of action. The elements for a cause of action for contributory false advertising are (1) "a third party in fact directly engaged in false advertising that injured the plaintiff[,]" and (2) "the defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it." *ISK Biocides*, 2022 WL 122923, at *7 *quoting Duty Free*, 797 F.3d at 1277. As to the first element, the Complaint alleges that the Marketing Defendants directly engaged in false advertising that injured Capital Vacations; Compl., ¶¶ 125-127; and included an exhaustive list of detailed allegations describing the nature of such scheme. *Id.* at ¶¶ 1-100. As to the second element, the Complaint includes specific allegations as to how the Legal Defendants contributed to such conduct. *Id.* at ¶¶ 128-33. At best, the Motion disputes the first of these elements and does not even attempt to challenge the adequacy of pleadings as to the second.

As to the Moving Parties' challenge to the first element, the Motion merely relies on its arguments as to why the Complaint fails to adequately allege a direct false advertising claim in Count I of the Complaint. Mem., p. 17. Moving Parties argue that, for a variety[2] of disparate

---

2 Specifically, Moving Parties assert that it would be improper to permit Count II to advance where " Defendants do not compete with Capital, the challenged statements by the Marketing Defendants do not disparage or even mention Capital, Stonegate Firm and its customers receive guidance and assistance from an attorney with relevant experience, there is no private right of action for the alleged unauthorized practice of law (especially by an entity who is not a party to the agreement

reasons, it would be "particularly inappropriate to allow Capital to proceed with the unrecognized claim." Mem., p. 17. Each, however, are no more than regurgitation of the same arguments Moving Parties offer in opposition to the adequacy of Capital Vacation's direct false advertising claim in Count I. *See* Mem., pp. 11-12, 14-16. For the reasons stated herein, these arguments fail and the Complaint adequately alleges a claim for false advertising against Stonegate Firm and others. *See supra*, § III.A. Thus, the Complaint adequately pleads the first element of contributory false advertising and Moving Parties' argument on this point fail.

## C. <u>Tortious Interference</u>

Count III of the Complaint properly alleges a claim for tortious interference against the Marketing Defendants. *See e.g., Reisman v. Univ. of S.C.*, No. 3:24-2451-SAL-PJG, 2024 WL 4309417, at *1 n.1 (D.S.C. Aug. 12, 2024) (Recognizing that South Carolina law provides for both "tortious interference with contractual relations" and "with prospective contractual relations").

### 1. *Interference with Contracts*

Stating a claim for interference with a contract requires alleging that "(1) a valid contract exists; (2) the defendant has knowledge of the contract; (3) the defendant intentionally procures its breach; (4) the defendant acted without justification; and (5) the plaintiff suffers prejudice." *Broach v. Carter*, 399 S.C. 434, 441, 732 S.E.2d 185, 188 (Ct. App. 2012).

Here, the Complaint includes such allegations. First, it alleges the existence of valid contracts by pleading that "Capital Vacations has business and contractual relationships with the CV Owners as documented by the Timeshare Contracts." Compl. ¶ 140. Second, the Complaint alleges that Defendants had "actual, constructive, and/or specific knowledge of the business and contractual relationships between Capital Vacations and the CV Owners." *Id.*, at ¶ 142. Indeed,

---

allegedly constituting the unauthorized practice), and the conduct at issue does not constitute the unauthorized practice of law." Mem., p. 17.

the Complaint alleges that Marketing Defendants' purported service is "conditioned on the existence of a business or contractual relationship between Capital Vacations and CV Owners," which makes implausible any contention that Marketing Defendants lack knowledge of the contracts. *See id*., at ¶143. Third, the Complaint alleges that "Defendants intentionally procured the CV Owners to breach their contracts with Capital Vacations…" *Id*., at ¶ 144. The Complaint further alleges that Defendants acted without justification because they are "strangers to the contractual relationships," lack any "attorney-client relationship with CV Owners," are not agents of the owners, and were "motivated by personal gain and not the interests of CV Owners." *Id*., at ¶¶ 151-54. Finally, Capital Vacations alleges resulting prejudice, including that "CV Owners have terminated their relationships with Capital Vacations" and that Capital Vacations has incurred "costs related to the recovery of delinquent timeshare interests." *Id.*, at ¶ 156.

The Motion disputes the adequacy of these pleadings merely by stating that the Complaint does not reference a particular contract. Mem., p. 18. Without specific reference, Moving Parties contend that Capital Vacations cannot establish the first (existence of a contract) and second (defendant knowledge of contract) elements. This level of specificity is not the law. All that a plaintiff must allege is "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Indeed, other courts have already rejected this argument by other timeshare exit companies in similar litigation. In *Wyndham Vacation Ownership, Inc. v. US Consumer Attorneys,* P.A., the court rejected defendants' argument that a tortious interference claim requires a plaintiff to plead specific customer identities, the existence of specific contracts, or defendants' knowledge with the heightened particularity demanded by Fed. R. Civ. P. 9(b). No. 18-81251-CIV, 2019 WL 7837887, at *12 (S.D. Fla. July 3, 2019). The result here should be no different.

Here, the Complaint alleges the existence of contracts with third-party consumers and identifies the parties of such contracts as Capital Vacations and defendants' own customers. Compl., ¶¶ 66, 140, 142. The Complaint also includes allegations as to the pertinent terms of such contracts. *Id.*, at ¶¶ 36-42. Indeed, the entire premise of the services that the Defendants advertise revolves around such contracts. *Id.*, at ¶ 141. Such foundational aspect of the Complaint's allegations rebuts Moving Parties' argument as to both the first and second elements. The Complaint plainly alleges the identity of the contracts and that Moving Parties knew of the relevant contracts because their entire scheme revolved around said contracts. Moreover, as Defendants will know the identity of their customers, the Complaint provides adequate direction to Defendants as to bounds of the universe of at-issue contracts. Moving Parties suggest that the contracts must be specifically identified so that they can determine what defenses to assert. Mem., p. 18. The Defendants already have knowledge of the contracts that their customers hired them to cancel and can thus assess whether any of their hypothetical legal arguments apply. The Moving Parties' claims of ambiguity are simply not credible.

### 2. *Interference with Prospective Contracts*

Stating a claim for interference with prospective contracts requires alleging "(1) the intentional interference with the plaintiff's potential contractual relations, (2) for an improper purpose or by improper methods, and (3) causing injury to the plaintiff." *United Educ. Distributors, LLC v. Educ. Testing Serv.*, 350 S.C. 7, 14, 564 S.E.2d 324, 328 (Ct. App. 2002).

Here, the Complaint includes such allegations. As to the first element, Capital Vacations alleges that it "has an expectation that it may enter into further contracts with the CV Owners," and that Marketing Defendants "intentionally interfered with potential future contracts between Capital Vacations and the CV Owners by separating CV Owners and Capital Vacations through the Template Letters, Consulting Letters, and Demand Letters." Compl. ¶¶ 141, 145. The

Complaint further alleges that Defendants' services are "conditioned on the existence of a business or contractual relationship between Capital Vacations and CV Owners," underscoring Defendants' intentional targeting of those prospective relationships. *Id.* ¶ 143.

With respect to the second element, the Complaint alleges that Marketing Defendants acted for an improper purpose and by improper methods. Specifically, it alleges that Defendants utilized "improper and/or illegal methods," including "false and misleading statements," acted "with improper motive and not in good faith," and were "motivated by personal gain and not by the interests of the CV Owners." *Id.* ¶¶ 147–49, 154. Finally, the Complaint alleges resulting injury. Capital Vacations pleads that, as a direct and proximate result of Defendants' interference, it has been unable to enter into subsequent transactions with CV Owners, has suffered unpaid loan balances and recovery costs, and has experienced ongoing disruption of customer and contractual relationships causing irreparable harm. *Id.* ¶¶ 156–57.

The Motion argues that the Complaint does not adequately identify a specific prospective contract. Mem. P. 20. Yet, this ignores the Complaint's allegations that Capital Vacations has an expectation that it may enter into additional timeshare contracts with those individuals that are already timeshare owners (the "CV Owners"). Compl., ¶ 141. Moreover, Moving Parties' assertion that the Complaint fails to adequately allege that Defendants deliberately interfered with the prospective relationship through improper motive or method misses the entire weight of the Complaint. In its entirety, the Complaint describes how the Defendants insert themselves between Capital Vacations and its customer base through dishonest methods with the stated goal of ending the relationship between Capital Vacations and its existing customers, but never providing any real service. Accordingly, the Court should deny the Motion as to Count III of the Complaint.

**D.** **Conspiracy**

Count IV of the Complaint adequately alleges a civil conspiracy claim against all

Defendants. Indeed, at its simplest, the Complaint alleges a scheme whereby the Defendants act in concert (each providing a different contribution) to deceive the public in the sale of illusory services.

"Under South Carolina law, a plaintiff asserting a civil conspiracy claim must establish (1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff." *Andrews v. City of Myrtle Beach*, No. 4:24-CV-0825-JD-TER, 2025 WL 1852223, at *2 (D.S.C. June 13, 2025), *report and recommendation adopted*, No. 4:24-CV-00825-JD-TER, 2025 WL 1792856 (D.S.C. June 30, 2025).

As to the first element, the Complaint alleges a combination of two or more persons by pleading that Defendants "acted in concert" pursuant to a "common design, scheme, or plan" and combined to commit unlawful acts, including inducing Capital Vacations Owners to breach their contracts, denying Capital Vacations the ability to enter into new contracts, and misrepresenting the nature of Defendants' services. Compl. ¶¶ 161–65.

As to the second element, the Complaint alleges that Defendants acted to commit an unlawful act or a lawful act by unlawful means. Specifically, the Complaint alleges that the "Defendants conspired to do an unlawful act to cause Capital Vacations harm." Compl., ¶ 164. The Complaint further pleads that Defendants conspired "to do an unlawful act to cause Capital Vacations harm," acted with a "predominant purpose to injure" Capital Vacations for financial gain, and acted "with specific intent to harm Capital Vacations and with malice." *Id.* ¶¶ 164, 174. Such unlawful acts, the Complaint alleges, include the "unlawful and/or illegal means of interfering causing Capital Vacations Owners to breach their Timeshare Contracts with Capital

Vacations or interfering with Plaintiff's ability to enter into new contracts with CV Owners." *Id.*, at ¶ 164.

As to the third element, the Complaint alleges that each Defendant performed overt acts in furtherance of the conspiracy, with the Marketing Defendants and Legal Defendants playing complementary and interdependent roles such that neither could have accomplished the scheme without the other. *Id.* at ¶¶ 165–68. Indeed, the Complaint specifically alleges the overt acts that each Defendant took. *Id.*, at ¶ 166.

As to the fourth element, the Complaint alleges damages resulting directly and proximately from the conspiracy, including the unlawful termination or attempted termination of Timeshare Contracts, disruption and loss of Capital Vacations' relationships with Capital Vacations Owners, and resulting financial damages. *Id.* ¶¶ 169, 173.

Otherwise, Moving Parties assert a number of misplaced arguments. First, Moving Parties claim that the Complaint is defective because the fine print on the Stonegate Firm's website cautions consumers against non-payment and encourages them to exhaust all available options with developers like Capital Vacations. Mem., pp. 21-22. Notwithstanding the legal weight of such fine print; *see supra*, § III.A.2; a statement by the defendant on a website is not dispositive of a timeshare owner's decision making or what other communications Moving Parties have with the consumers, which process is not only described in detailin the Complaint; Compl. ¶¶ 50-64; but provides ample opportunity for Defendants to guide the owners in certain directions completely contrary to the website statements. Evidence of that must come in discovery and presents a question of fact, not appropriate for adjudication at the motion to dismiss stage. *Lemberg Law*, 2020 WL 2813177, at *11 ("whether the Defendants' disclaimer effectively cures an otherwise misleading advertisement is a matter of fact, which may be an improper determination on a Rule

12(b)(6) motion to dismiss"); *Sciele Pharma, 2010 WL 9098290, at \*7* ("The Court agrees with plaintiff that the disclaimer issue is more appropriately resolved on a motion for summary judgment or at trial").

Second, Moving Parties re-assert their contention that the Complaint lacks "sufficient factual matter to state a plausible claim that Defendants made unfair or deceptive statements on the Stonegate Firm website…" Mem., p. 22. For the same reasons stated above, this is incorrect. *See supra*, § III.A.2.

Finally, the Moving Parties argue that the Complaint does not adequately allege that the Defendants committed an unlawful act with an intent to harm Capital Vacations. As described, the Defendants' entire sham operation is set up to harm Capital Vacations by terminating contracts entered into between Capital Vacations and Defendants' customers. Compl. ¶¶ 50-64, 164. The Moving Parties' attempt to draw a comparison between their services and those of attorneys actually acting in such capacity is telling given the lengths their advertising goes to convince the public that they actually provide legal services. The distinction between real attorneys practicing law and what the Moving Parties are doing is that in the former circumstance, an attorney forms a privileged relationship and is protected from liability. *See Argoe v. Three Rivers Behavioral Ctr. & Psychiatric Sols.*, 388 S.C. 394, 400, 697 (2010) ("Generally, 'an attorney is immune from liability to third persons arising from the performance of his professional activities as an attorney on behalf of and with the knowledge of his client'"). The same cannot be said for the Moving Parties who—despite their attempts to claim otherwise—never actually assume the role of licensed legal advocates.

All that is required to show intent to harm in the context of a conspiracy is that the conspiracy's "primary purpose or object" was "to injure the plaintiff," even if the conspirators

were also motivated by a desire to protect or benefit their own interests. *Benedict Coll. v. Nat'l Credit Sys., Inc.*, 735 S.E.2d 518, 522 (S.C. Ct. App. 2012). Here, the Complaint alleges that the Defendants intentionally orchestrated a scheme to induce Capital Vacations Owners to breach their contracts and disrupt Capital Vacations' business relationships, demonstrating that the primary purpose of their conduct was to injure Capital Vacations, satisfying the standard articulated in *Benedict College. See id.* at 522; Compl. ¶¶ 50-64, 164.

Accordingly, the Court should deny the Motion as to Count IV of the Complaint.

### E. South Carolina Unfair Trade Practices Act

Count V of the Complaint adequately alleges a claim under SCUTPA in connection with the Defendants' fake promises to terminate timeshare contracts through legal services.

There are three basic elements of a claim under SCUTPA. "[T]he plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected [the] public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 403 S.C. 623, 638 (2013) (internal quotation and citation omitted).

Moving Parties argue that the Complaint's detailed allegations do not[3] allege "an unfair or deceptive act". Mem., p. 24. Under South Carolina law, an act is "unfair" when it is "offensive to public policy or when it is immoral, unethical, or oppressive." *Wright v. Craft*, 640 S.E.2d 486, 500 (S.C. Ct. App. 2006). A "deceptive" act is "any act which has a tendency to deceive." *Id.* Here, the Complaint includes extensive allegations that the Defendants engaged in precisely such

---

[3] Separately, Moving Parties reiterate their incorrect claim that the Complaint does not adequately allege any misleading statements. Mem. at p. 23. It appears that these arguments fall within the umbrella of the first element.

conduct. For example, the Marketing Defendants lured Capital Vacations Owners into procuring illusory services through false advertising, including "False and/or Misleading Advertisements" and guarantees of outcomes that were impossible for them to a provide and certainly not without Capital Vacations' consent.  Compl. ¶¶ 186(a)–(d).  Defendants further misrepresented that they could provide legal services through attorneys who were not licensed in the relevant jurisdictions, thereby creating the false impression that consumers would receive enforceable legal assistance, all the while violating prohibitions on the unlicensed practice of law.  *Id.* at ¶ 189.  The Complaint further alleges that these Deceptive and Unfair Acts "offend established public policy," are "immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers and businesses alike."  *Id.* at ¶ 194.  Finally, the Complaint adequately alleges an unfair or deceptive act in regard to the Legal Defendants pursuant to S.C. Code § 39-5-39[4] in that they create the false impression that they are licensed to practice law in South Carolina or any other state other than New Jersey, when in fact Donovan is only licensed to practice law in New Jersey.  *Id.*, at ¶ 188.

Moving Parties again weakly challenge the adequacy of the pleadings by again pointing to the fine print of the website.  Mem., p. 24.  For the reasons stated above, this does not excuse the thrust of the commentary and—at best—presents a question of fact for determination at a later stage of the case.  *Lemberg Law*, 2020 WL 2813177, at *11 ("whether the Defendants' disclaimer effectively cures an otherwise misleading advertisement is a matter of fact, which may be an improper determination on a Rule 12(b)(6) motion to dismiss"); *Sciele Pharma, 2010 WL 9098290, at *7* ("The Court agrees with plaintiff that the disclaimer issue is more appropriately resolved on

---

[4] Statutory provision stating that "it is an unlawful trade practice, pursuant to Section 39-5-20, for an attorney to advertise his services in this State in a false, deceptive, or misleading manner including, but not limited to, the use of a nickname that creates an unreasonable expectation of results."  S.C. Code Ann. § 39-5-39

a motion for summary judgment or at trial"). Accordingly, the Complaint adequately pleads the irst element of Capital Vacations' SCUTPA claim.

Second, the Complaint adequately alleges that the unfair or deceptive act affected [the] public interest. "Under South Carolina law, unfair or deceptive acts have an adverse impact upon the if those acts have the potential for repetition." *Bessinger v. Food Lion, Inc.*, 305 F. Supp. 2d 574, 581 (D.S.C. 2003), *aff'd sub nom. Bessinger v. Food Lion, LLC*, 115 F. App'x 636 (4th Cir. 2004). Moreover, "an effect on the public interest can be inferred from the fact that this opportunity was offered to different members of the public including the investors herein." *Goiser v. Harper*, 307 S.C. 64, 66, 413 S.E.2d 845, 847 (Ct. App. 1991). The Complaint alleges that the "Deceptive and Unfair Acts" were not isolated events, but instead part of a systematic scheme affecting multiple consumers in South Carolina and elsewhere. Compl., ¶¶ 196–199. The alleged "Deceptive and Unfair Acts" are, accordingly, capable of repetition as the Complaint alleges the conduct to be part of a repeated sales process that targets multiple consumers. Compl., ¶¶ 31(b), 196, 198, 199. The Complaint adequately pleads the second element of the SCUTPA claim.

Finally, the Complaint adequately pleads the third element of a SCUTPA claim as Capital Vacations alleges it suffered a monetary loss as a result of the alleged unfair or deceptive acts. Specifically, the Complaint states:

> Defendants' actions, including the Deceptive and Unfair Acts, have injured Capital Vacations in that losing members adversely impacts Capital Vacations' Club and its composite resorts including the more than a dozen located in South Carolina; Capital Vacations **failed to receive outstanding loan payments** it was entitled to receive from CV Owners; **suffered costs** associated with past due collection efforts and foreclosure proceedings; **incurred maintenance fees** on recovered inventory; incurred marketing costs for re-sale of recovered inventory; and lost opportunity to reengage with CV Owners so as to resolve issues without the taint of Defendants' interference.

Compl., ¶ 201 (emphasis added).

25

While such allegations satisfy the prima facie elements of a SCUTPA claim, Moving Defendants mistakenly argue that the claim is improper because it asserts rights attributable to others, or is surreptitiously attempting to bring this claim as a class action. Mem. pp. 25-26. This is false. As stated, Capital Vacations only asserts this claim to recover for injuries that it suffered. Compl., ¶ 200-01. Thus, the case law that Moving Defendants cite is not applicable. In *Dema v. Tenet Physicians Services-Hilton Head, Inc.*, the plaintiffs brought the "suit as a class action.". 383 S.C. 115, 122, 678 S.E.2d 430, 434 (2009). In *Williams v. Preiss-Wal Pat III, LLC*, plaintiffs brought claims "not on their own behalf but as representatives of" and estate. 17 F. Supp. 3d 528, 538 (D.S.C. 2014). In *Dykes v. Wild Wing Co., LLC*, plaintiffs "brought this lawsuit as a shareholder derivative complaint, which is representative in nature." No. 2021-000767, 2025 WL 2409189, at *8 (S.C. Ct. App. Aug. 20, 2025). In each of the Moving Parties' cited cases, the plaintiffs expressly sought to recover under SCUTPA for injury to others. Capital Vacations makes no such claim. Instead, the Complaint asserts this claim to recover for injuries that it suffered. Compl., ¶ 200-01.

Indeed, the Moving Defendants separately cited to a similar prior case wherein the Court rejected this very argument. In *Cap. Resorts Grp., LLC v. Wesley Fin. Grp*, the Court denied a motion to dismiss a SCUTPA claim that Capital Vacations brought against a different timeshare exit company pursuing a similar scheme despite argument that the SCUTPA claim was in a representative capacity. No. 4:24-CV-03043-JDA, 2025 WL 1047421, at *9 (D.S.C. Apr. 7, 2025) ("Defendants argue that Capital Vacations' claim for violations of the SCUTPA fails because it improperly seeks to bring representative claims for alleged injuries to third parties…"). The Court concluded that "at this stage of the case, Capital Vacations has sufficiently pled a claim for violations of the SCUTPA." *Id.* Thus, the statutory prohibition against bringing SCUPTA claims

in a representative capacity is not triggered in this instance.

Accordingly, the Court should deny the Motion in regard to Capital Vacations' SCUTPA claim.

## IV. CONCLUSION

The Complaint has been properly pled, including asserting all necessary elements of each of the causes of action. Rather than assert meritorious arguments, the Motion is no more than an attempt to escape substantive scrutiny in regard to claims that other courts have repeatedly found to be viable under substantively similar circumstances. Thus, the Court should deny the Motion in its entirety.

Dated: January 19, 2026

GORDON REES SCULLY MANSUKHANI LLP

*/s/ A Victor Rawl*
A. Victor Rawl, Jr. (Fed 06971)
E-mail: vrawl@grsm.com
Kerry K. Jardine (Fed 11921)
E-mail: kjardine@grsm.com
677 King Street, Suite 450
Charleston, SC 29403
Telephone: (843) 278-5900

Alfred J. Bennington, Jr., (*Admitted Pro hac vice*)
bbennington@shutts.com
Glennys Ortega Rubin, (*Admitted Pro hac vice*)
grubin@shutts.com
Michael J. Quinn, (*Admitted Pro hac vice*)
mquinn@shutts.com
Benjamin F. Elliott, (*Admitted Pro hac vice*)
belliott@shutts.com
SHUTTS & BOWEN LLP
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile: (407) 849-7255
*Attorneys for Plaintiff*