| | |
|---|---|
| Capital Resorts Group, LLC d/b/a Capital Vacations, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> The Stonegate Firm, LLC, CP Online Ventures, LLC, Bradley Post, Adam Colbert, Stonegate Law, LLC, and Dennis Donovan, Esq., <br><br> Defendants. | Civil Action No.: 9:25-cv-13124-BHH <br><br><br> **DEFENDANTS THE STONEGATE FIRM, LLC, STONEGATE LAW, LLC, AND DENNIS DONOVAN, ESQ.'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)** |

If a timeshare seller induces a consumer to purchase a timeshare interest based on fraudulent misrepresentations, the consumer has a right to rescind the contract and sue for damages. *Enhance-It, L.L.C. v. Am. Access Techs., Inc.*, 413 F. Supp. 2d 626, 631 (D.S.C. 2006). Post-sale conduct by the seller can also give rise to a claim in favor of the consumer. Further, if the timeshare seller improperly reports the consumer's debt obligations, the consumer may also have a claim against the timeshare seller. *See* 15 U.S.C. § 1681n.

Plaintiff is an example of a timeshare seller that has significant resources at its disposal. Given the complexities of the situation and the imbalance of resources, a consumer faced with improper practices by a timeshare seller has a need for assistance with his or her rights under the various consumer protection laws.

Stonegate Firm and Stonegate Law provide those services to consumers who need them. Stonegate Firm's website at issue in this case does not mention Plaintiff, Capital Resorts Group, at all. Further, the website makes no generally derogatory statement about timeshare industry participants or their products.

Plaintiff's Complaint takes issue with how Defendant Donovan (a licensed attorney)

provides services to Stonegate Firm and Stonegate Law (a law firm). But how Donovan participates in the provision of services by Stonegate Firm and Stonegate Law is not within the zone of Plaintiff's interests protected by the false advertising provisions of the Lanham Act.

Stonegate Firm's website specifically advises consumers to "always honor your contractual obligations to your resort until you are no longer responsible for those obligations." (Dkt. 24-3 p. 7.) It goes on to state that "We do not recommend stopping any payments. Your contract with your resort is presumed to be valid. We believe there are better ways to work with your resort than simply defaulting on your payments." (*Id.*) There is no other statement on the website that contradicts these statements. Plaintiff's conclusory allegation that the "Marketing Defendants" instruct consumers to cease making payments has no basis in the text of the website, and there are no specific factual allegations supporting such a conclusion. Further, Plaintiff's Complaint fails to allege facts that could support a plausible inference that the website's statements concerning the method or details of Donovan's involvement with Stonegate Firm or Stonegate Law are false or that his involvement improperly "caused" consumers to cease making payments to Plaintiff. For these and other reasons discussed herein, Defendants' motion to dismiss should be granted.

**Standard of Review.**

Plaintiff's conclusory allegations and unreasonable inferences are insufficient to survive this Motion. A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," and "on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 540 at 555 (citations omitted.). A plaintiff must "do more than

plead facts that are 'merely consistent with a defendant's liability,' but must 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 511 (4th Cir. 2015) (cleaned up). Plaintiff's Complaint does not meet this standard and should be dismissed.[1]

## I.      False Advertising - 15 U.S.C. § 1125(a)(1)

### A.      Zone of Interests

A false advertising plaintiff must establish that its claim falls within its zone of interests protected by the statute, which requires an alleged "injury to a commercial interest in reputation or sales." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131-132 (2014). Plaintiff's argument that the subject website, which does not mention Plaintiff, constitutes false advertising under the Lanham Act is based solely on conclusory allegations, which have no foundation in the website content and, in many cases, is contradicted thereby. Plaintiff's problems are simply not the result of website content.

In *Lexmark*, the Court allowed a Lanham Act claim to proceed where the defendant falsely advised numerous companies that the plaintiff's method of doing business was illegal. 572 U.S. at 122-123. Here, Stonegate Firm's website makes no such statement. Stonegate's website's statement: "**If** your timeshare developer lied, misrepresented facts, pressured you, or coerced you into purchasing your timeshare, Dennis is the attorney you want overseeing your timeshare exit strategy" does not disparage Plaintiff, its services or the industry. (Complaint ¶ 64.m at p. 15; emphasis supplied.) The description of Defendant Donovan's involvement with Stonegate Firm

---

[1] Plaintiff states that Defendants Post, Colbert, and CP Online Ventures, LLC do not "dispute the adequacy of the pleadings." (Dkt. 29 p. 2.) The memorandum supporting the Rule 12(b)(6) motion notes that those Defendants filed a motion to dismiss for lack of personal jurisdiction and that they reserved all arguments and defenses while that motion is pending. (Dkt. 24-1 p. 8 n. 1.)

and Stonegate Law did not plausibly injure Plaintiff's commercial interest in reputation or sales.

None of the unreported cases from other jurisdictions Plaintiff cites allow a false advertising claim to proceed absent a factual foundation demonstrating that the advertisement promoted the alleged damage (*i.e.* strategic defaults) or disparaged the plaintiff or its products/services/industry. The two Reed Hein & Associates opinions are distinguishable. In *Wyndham Vacation Ownership, Inc. v. Reed Hein & Assocs.*, 6:18-cv-2171-GAP-DCI, 2019 WL 3934468 at *5 n. 6 (M.D. Fla. Aug. 20, 2019) the defendant's website made false statements about the timeshare industry generally and statements that targeted the plaintiff.  Not so here.  Similarly, *Diamond Resorts Inter., Inc. v. Reed Hein & Assocs.*, Case No. 2:17-cv-03007-APG-VCF, 2019 WL 6310717 (D. Nev. Nov. 25, 2019) involved advertising statements guaranteeing a safe and legitimate timeshare cancellation "without obligations" with companies like the plaintiff and defendants' method "often involved breach and subsequent foreclosure."  *Id.* at *1-2, 4-5. In *Wyndham Vacation Ownership v. Gallager*, Case No. 6:19-cv-476-GAP-EJK, 2019 WL 5458815 (M.D. Fla. Sept. 10, 2019), advertisements asserted that "there are no timeshare contracts with any timeshare developer" that defendant cannot guarantee release from, there was a factual basis for a strategic default strategy, and the defendant considered a resulting foreclosure to be a success. *Bluegreen Vacations Unltd., Inc. v. Timeshare Lawyers P.A.*, Case No. 20-24681-CIV, 2023 WL 3198192 (S.D.Fla. May 2, 2023) also involved the alleged promotion of strategic default by timeshare owners coupled with allegedly false representations that the timeshare owner's credit would be protected during the timeshare exit process.  Here, Stonegate Firm's website contains no statement along the lines that that there is no timeshare contract that defendants cannot cancel or a business method that automatically considers foreclosure to be a complete success.

Stonegate Firm's website makes no statements about Capital Resorts and no allegedly false

statements about the industry, and it does not advertise strategic default; it specifically advises timeshare owners *not* to cease making payments to the sellers. Dkt. 24-3 at pp. 6 and 7. Moreover, Plaintiff does not plausibly allege a fraudulent advertising scheme involved with Defendants' services such as the strategic default process involved in the *Reed Hein* opinions.[2]

### B. Proximate Cause

A false advertising plaintiff "must show economic or reputational *injury flowing directly from* the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133. The total disconnect between the alleged advertisements and Plaintiff's purported injury demonstrates the factual implausibility of "injury flowing directly" from the alleged advertisements.

Plaintiff's response relies solely on conclusory assertions to establish a nexus between the alleged false and misleading statements by Defendants and the alleged damages. (Dkt. 29 pp. 7-9.) Plaintiff argues that "Defendants' actions cause [owners of timeshares sold by Plaintiff] to cease payments owed to" Plaintiff, and as a result of the cessation of payments plaintiff suffers damage, and that without the allegedly false advertising statements, the timeshare owners would have continued to make payments on their timeshare contracts. (*Id.* 7). What in the advertisements plausibly caused the strategic default?

Stonegate Firm's website advises timeshare owners not to cease making payments due under their timeshare contracts, and Plaintiff alleges no factual basis to support an inference that

---

[2] Plaintiff's exhibit for its response to the motion to dismiss for lack of jurisdiction (Dkt. 30-6 pp. 4-5) undermines any notion of a fraudulent scheme. The exhibit is a letter from Stonegate Law to Plaintiff that identifies specific sales practices and misrepresentations to a particular consumer, applies applicable consumer protection statutes, and engages with Plaintiff to cancel the contract, refund amounts paid, and correct and remove any adverse credit reporting. There is nothing inappropriate about Defendants' business practices and certainly no false or misleading advertising that plausibly injured Plaintiff's commercial interest in reputation or sales.

just the opposite is true – that false and misleading advertising statements by Defendants caused timeshare owners to cease making payments to Plaintiff. Defendant Donovan's role with Stonegate Firm and Stonegate Law also fails to bridge this gap in logic. Some timeshare owners may cease making payments to Plaintiff because of inability to pay or other reasons of their own, but there is nothing in the text of the advertising statements that causes this default. The alleged AI-generated photos, the alleged similarity of "Stonegate Law" and "Stonegate Firm", and the alleged improper holding out of legal services all have one thing in common with respect to Plaintiff's alleged injury timeshare defaults/failure to further upsell a disgruntled timeshare owner: they are "simply too speculative and remote to be cognizable under Section 1125(a)." *The Muhler Co., Inc. v. Ply Gem Holdings, Inc.,* Case No. 2:11-cv-862-SB, 2014 WL 12637909 at * 3 (D.S.C. Dec. 17, 2014).

Plaintiff argues that Defendants' assertion that the parties are not economic competitors "is factually false and a legal red-herring." (Dkt. 29 p. 8.) Plaintiff is wrong. "[A] plaintiff who does not compete with the defendant will often have a harder time establishing proximate causation." *Lexmark*, 572 U.S. at 136. Plaintiff and Defendants are not economic competitors. Defendants do not sell timeshare interests. And Plaintiff does not help defrauded timeshare owners get out of their timeshare contracts. Does Plaintiff routinely advise consumers who purchased timeshare interests (from itself or any other firm) that the sale was based on fraudulent misrepresentations, that its post-sale conduct gave rise to claims against it, or that its improper credit reporting is actionable? Of course not. Plaintiff and Defendants may be "competitive" in the sense of taking adverse positions in some situations (like plaintiffs' attorneys and insurance companies), but it is implausible to suggest that Plaintiff and Defendants are economic competitors in the sense of offering the same services. This explains the inability to demonstrate proximate cause here.

Plaintiff argues that *Geomatrix, LLC v. NSF Intern.*, 629 F.Supp.3d 691 (E.D. Mich. 2022),

*aff'd*, 82 F.4th 466 (6th Cir. 2023) is not persuasive because an independent decision of state regulators was involved. (Dkt. 29 pp. 8-9.) But that is a distinction that does not make a difference here. "Proximate-cause analysis is controlled by the nature of the statutory cause of action. The question it presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Lexmark*, 572 U.S. at 133. "[A] plaintiff suing under Section 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that … occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* "[L]ike any other element of a cause of action, [proximate cause] must be adequately alleged at the pleading stage in order for the case to proceed." *Id.* 572 U.S. at 134 n. 6. The Stonegate Firm website statements do not mention Plaintiff; they do not mention Plaintiff's services or products; and they do not make a general statement along the lines that selling timeshare interests is illegal. And the website statements about Donovan's role with Stonegate Firm and Stonegate Law are simply too remote and disconnected from Plaintiff's services to support a plausible inference that potential timeshare purchasers withheld trade from Plaintiff as a result of something allegedly false or misleading in those statements.

### C. Capital fails to allege a material false and misleading statement.

Plaintiff's response incorrectly relies on conclusory statements that Defendants provide "illusory services" to its clients and that Defendants "cannot and do not provide" timeshare exit services, or any legal services, as described in Stonegate Firm's website. (Dkt. 29 pp. 9-10.) These vague and unsupported statements are not sufficient to state a Lanham Act claim.

Unlike some other timeshare seller/time share exit company lawsuits, this case does not involve directions to consumers to cease making payments to timeshare sellers and calling it a day. Defendants assist consumers with the specifics of their claims and seek to achieve successful

results.  Plaintiff's conclusory assertion that Defendants' services are illusory and/or that no legal representation is provided has no factual foundation. Plaintiff does not allege that Defendants' website makes any advertising statement inconsistent with the recommendation to keep making payments to timeshare sellers.  But Plaintiff argues that certain disclosures on Stonegate Firm's website plainly stating that Stonegate Firm is not a law firm are ineffective "disclaimers."  (Dkt. 29 pp. 11-12.)  Plaintiff contends that other statements on the website lead consumers to believe that, contrary to these express statements, that Stonegate Firm is in fact a law firm.  That contention is not supported by the advertising at issue.  The advertising states that Donovan is involved with Stonegate Firm as in-house counsel as well as involved with Stonegate Law.  Plaintiff has not pointed to any statement that is false or misleading or that would be material to a consumer.

Plaintiff's cited cases about disclaimers being ineffective (Dkt. 29 pp. 11-12) are not applicable here because the express statements that Stonegate Firm is not a law firm and the descriptions of Donovan's role are not contradictory with other statements on the website. *See Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GMBH*, Case No. 14-cv-585-AJN, 2015 WL 4002468 (S.D. N.Y. July 1, 2015) (defendant used objectionable representations in its packaging after being instructed by the FDA to remove them, and not surprisingly, the Court concluded that a disclaimer located in a less conspicuous place containing contrary representations was ineffective to remedy the intentional false and misleading nature of the other prohibited representations); *Scilex Pharmaceuticals, Inc. v. Sanofi-Aventis U.S., LLC*, Case No. 21-cv-01280-JST, 2021 WL 11593043 (N.D.Cal. Aug. 16, 2021) (defendant's packaging for its over-the-counter lidocaine patch represented it contained the "Maximum Strength" available in a lidocaine patch, which improperly implied that it is equivalent/superior to prescription-strength patches despite a disclaimer on a separate panel limiting the representation to over-the-counter patches); and

*Asurion, LLC v. SquareTrade, Inc.*, 407 F.Supp.3d 744 (M.D.Tenn. 2019) (the defendant made a side-by-side comparison of its mobile phone warranty to the plaintiff's and stated defendant's product was available at a lower cost, which plausibly misled consumers into believing the warranties were equivalent despite the fact that defendant's warranty did not cover theft or loss).

The website accurately states that Donovan is in-house counsel for Stonegate Firm and assists with Stonegate Firm's services. The website also describes Stonegate Law as a law firm and as a separate entity from Stonegate Firm. *See, e.g*., Complaint paras. 64.b, g, l, m, and o. The further disclosure that "Stonegate Firm, LLC is not a law firm" is contained in and readily accessible on the same website and is fully consistent with the other statements on the website. There is nothing false, contradictory, or misleading about the website.

Plaintiff also argues that the falsity of the express disclosure that Stonegate Firm is not a law firm is a matter of fact, which is beyond the scope of a Rule 12(b)(6) motion to dismiss (Dkt. 29 p. 12), but that is only the case if there are contrary (and material) representations that would serve as a basis for dispute. There are not. The website explains that Donovan is involved with the services provided by both Stonegate Firm and Stonegate Law, and that Stonegate Law is a law firm and a separate entity from Stonegate Firm. There are no inconsistencies, and the website statements are not "otherwise misleading." Plaintiff's reliance (Dkt. 29 p. 12) on *Lemberg Law, LLC v. eGeneration Mktg., Inc.*, Case No. 3:18-cv-570 (CSH), 2020 WL 2813177 (D.Conn. May 29, 2020) is misplaced because, in that case, a group of non-lawyer defendants offered free legal consultations to assist with FDCPA claims and stated "Contact Our Debt Lawyers Now," which could not be clarified with a disclaimer of legal services. In *Sciele Pharma, Inc. v. Brookstone Pharma., LLC*, Case No. 1:09-cv-3283-JEC, 2010 WL 9098290 (N.D.Ga. June 23, 2010), the defendant's less expensive prenatal vitamin was represented to contain the same key ingredients

as plaintiff's vitamin when defendant's product allegedly contained a harmful ingredient, despite a disclaimer regarding equivalency. Here, the website's consistent disclosure that Stonegate Firm is not a law firm is prominent and not contradicted by any other disclosure.

### D. Materiality

Plaintiff contends that Defendants do not challenge certain elements of Plaintiff's Lanham Act cause of action, namely whether an alleged false and misleading statement is material and whether it actually deceived or had the tendency to deceive a substantial segment of the consuming public. Dkt. 29 pp. 12-14. Relevant case law using the rubric of the zone of interests protected by the Act as well as the fundamentals of proximate cause take into consideration all of these factors. Further, Defendants' opening brief contains the following section: "C. Capital fails to allege a material false or misleading statement." (Dkt. 24-1 p. 14.) Statements regarding Donovan's role with Stonegate Firm and Stonegate Law and the nature of the services are not false or misleading, so they cannot deceive or have a tendency to deceive. These statements do not mention Plaintiff, either by name or by reference to its timeshare products. Accordingly, they are not material.

### II. Contributory False Advertising

Because Plaintiff's false advertising claim must be dismissed, the contributory false advertising claim must be dismissed. Further, as provided in the Motion, this cause of action should not be allowed to proceed, particularly under these facts.

### III. Tortious interference.

### A. Tortious interference with contract.

Plaintiff's response shows that the Complaint does no more than allege, in conclusory fashion, that Defendants interfered with unspecified contracts by "causing [timeshare owners] to breach obligations owed pursuant to the Timeshare Contracts." (Complaint ¶ 144; Dkt. 29 p. 17).

Plaintiff asserts that this is sufficient because, under Florida law, Florida district courts have allowed timeshare companies to generally plead this cause of action, citing *Wyndham Vacation Ownership, Inc. v. US Consumer Attorneys, P.A.*, Case No. 18-81251-CIV-Reinhart, 2019 WL 7837887 (S.D.Fla. July 3, 2019).  However, South Carolina law requires a tortious interference plaintiff to specifically allege how the defendant interfered with the contractual relationship, rather than a conclusory statement that a contract was breached. The South Carolina Supreme Court has emphasized that "[a]n essential element to the cause of action for tortious interference with contractual relations requires the intentional procurement of the contract's breach" and "[w]here there is no breach of the contract, there can be no recovery." *Eldeco, Inc. v. Charleston County School Dist.*, 372 S.C. 470, 481, 642 S.E.2d 726, 732 (2007).

Here, Plaintiff's allegations of unspecified conduct tied to the alleged breach of unspecified contracts does not provide the factual support for intentional procurement of a breach to state a tortious interference claim. *See Alexander v. S.C. Dep't of Transp.*, No. 3:20-4480-TLW-SVH, 2021 WL 5167807, at *12 (D.S.C. Aug. 23, 2021) (complaint failed to state a claim a claim for tortious interference because it "failed to identify the terms of the contract at issue that were allegedly breached, how those terms were breached, or how those terms were intentionally breached by [d]efendants"), *Report and Recommendation adopted by* 2021 WL 5166400 (D.S.C. Nov. 4, 2021). In fact, in *TTI Consumer Power Tools Inc. v. Engineered Plastic Components Inc.,* No. 8:22-CV-04085-JDA, 2024 WL 4277754, at *10 (D.S.C. Sept. 24, 2024), the court dismissed a tortious interference claim and held that South Carolina law, unlike the Second Restatement of Torts, requires more than conclusory allegations to identify the contract, breach and how defendant interfered.  This is distinguishable from Florida law. The essential element of "intentional procurement of the contract's breach" cannot be established by conclusory allegations like the

ones at issue here (i.e. the conclusory allegations stating that Defendant's told owners to stop paying). The Complaint fails to allege *which* contracts are at issue and, for each one, *how* Defendants allegedly procured the CV Owners to breach. The claim must be dismissed.

### B. Tortious interference with prospective contract.

Plaintiff must identify a truly prospective or potential contract with a third party that was a close certainty. "[A] cause of action for intentional interference with prospective contractual relations generally stands following the loss of an identifiable contract or expectation." *United Educ. Distributors, LLC v. Educ. Testing Serv.*, 350 S.C. 7, 564 S.E.2d 324, 328 (S.C. Ct. App. 2002). In *United Educational Distributors*, the South Carolina Court of Appeals held that "although [the plaintiff] has alleged facts sufficient to put [the defendant] on notice of a cause of action generally, it has failed to plead any specific contracts to put [the defendant] on notice of what, with some particularity, it must defend against in an intentional interference action." *Id.*

Plaintiff speculates that it "has an expectation that it may enter into further contracts with the CV Owners." (Dkt. 29 p. 18.) That is insufficient because South Carolina law requires pleading "at the outset, that [the plaintiff] had a truly prospective (or potential) contract with a third party" by pleading facts that demonstrate a reasonable expectation of contract benefits. 564 S.E.2d at 329. Plaintiff does not identify any specific CV owners it apparently expects to enter into future contracts with or why it has this expectation. *United Educational Distributors* requires pleading facts that show the prospective contract was "a close certainty" that cannot be speculative. *Id.* at 330. Plaintiff's general assertions about unspecified contracts with no foundation for a reasonable expectation of future benefits do not state a claim. *See Gaillard v. Fleet Mortgage Corp.,* 880 F. Supp. 1085 (D.S.C. 1995) (dismissing intentional interference with prospective contractual relations claim because plaintiff merely alleged general interference with potential clients);

*Kramer v. Pollock–Krasner Found.,* 890 F. Supp 250, 258 (S.D.N .Y.1995) ("must specify some particular, existing business relationship through which plaintiff would have done business but for the allegedly tortious behavior").

**IV.     Conspiracy.**

To prevail on its civil conspiracy claim, Plaintiff must adequately plead and prove: a combination or agreement of two or more persons to commit an unlawful act or to commit a lawful act by unlawful means, accompanied by overt acts that proximately cause damages to Plaintiff, which includes consideration of whether Defendants' primary intent was to harm Plaintiff. *Paradis v. Charleston Cty. Sch. Dist.*, 433 S.C. 562, 574-575 & n. 9, 861 S.E.2d 774, 780 (2021).  Plaintiff cites paragraphs 164 and 174 as support for its argument that Defendants acted to commit an unlawful act or a lawful act by lawful means.  (Dkt. 29  p. 20). Paragraph 164 is comprised of nothing more than naked assertions of "unlawful and/or illegal means" of interference with the alleged actual or prospective timeshare contracts. The Complaint does not plausibly allege how Defendants unlawfully caused (or used unlawful means to cause) timeshare owners to breach timeshare contracts or not to enter into new contracts.  Paragraph 174 alleges only that Defendants "acted with specific intent to harm Capital Vacations and with malice taking these actions." Paragraph 174 does not contain the factual matter needed for this element of civil conspiracy.

Further, as stated in the present Motion (Dkt. No. 24-1 pp. 21-22), Paragraph 162 of the complaint does not contain any factual support for Plaintiff's conclusory assertions of an unlawful act or lawful act by unlawful means.  Specifically, there is no factual basis for the conclusory allegations that Defendants *unlawfully or by unlawful means*: (a) induced timeshare owners to breach their contracts; (b) denied Capital the ability to enter into new timeshare contracts or (c) misrepresented the nature of their services.

As to the requirement that Plaintiff show that the "primary purpose" of Defendants' actions was an intent to harm Plaintiff, Plaintiff simply restates the requirement. (Dkt. 29 pp. 22-23.) Such conclusory allegations do not meet the standard, and it is implausible to conclude that Defendants' primary intent is to harm Plaintiff rather than to assist consumers who have a pressing need for consumer protection services. Accordingly, the civil conspiracy claim must be dismissed. *R.L. Mlazgar Associates, Inc. v. HLI Sol'ns, Inc.*, 6:22-cv-04729-JDA, 2025 WL 2224039 (D.S.C. Aug. 5, 2025) (dismissing civil conspiracy claim due to failure to allege sufficient facts).

## V.     South Carolina Unfair Trade Practices Act

In response to Defendants' motion to dismiss Plaintiff's SCUTPA claim, Plaintiff relies on conclusory allegations lacking a sufficient factual basis to support the claim. As a result, the claim should be dismissed because it is fundamental that a plaintiff must plead specific facts rather than conclusory allegations to establish a SCUTPA violation. *See e.g., Charleston Equities, Inc. v. Winslett*, No. 3:17-CV-137-JFA, 2017 WL 10504748, at *7 (D.S.C. Aug. 8, 2017) (dismissing a SCUTPA claim where plaintiff "failed to allege facts to support his naked assertions").

Plaintiff' alleges that Defendants lured CV Owners into procuring "illusory services" through false and/or misleading advertisements and offered guarantees to CV owners about their exits. (Compl. ¶ 186; Dkt. 29 p. 24.) But, as discussed above in connection with Plaintiff's Lanham Act claim, Plaintiff has not identified any material false or misleading statement by Defendants that plausibly supports an inference that such statements proximately caused damages to Plaintiff. For example, the Complaint fails to allege, for any CV Owner, what makes the services "illusory", how the "false or misleading statements" or "guarantees" to CV owners are unfair or deceptive or how they caused an ascertainable loss to Plaintiff.

Plaintiff also argues that Defendants "create the false impression that they are licensed to

practice law in South Carolina" (Complaint ¶ 188; Dkt. 29 p. 24) but has not alleged any facts that would support the alleged false impression that Donovan or anyone else is licensed to practice law in South Carolina. Stonegate Firm's website, by its nature, is accessible throughout the country and does not suggest it employs lawyers licensed in every state. Rather, indicating to the contrary, it provides: "STATE SPECIFIC REPRESENTATION: In the event that state specific legal representation is required in your exit strategy, your assigned attorney at Stonegate Law, LLC will consult with counsel in your state to ensure the most effective strategy." (Dkt. 24-3 p.7.)

Furthermore, there is no private right of action for the unauthorized practice of law, and even if one did exist, Plaintiff does not have standing to assert such a claim. Plaintiff has not alleged sufficient facts to establish causation between the alleged false impression the Legal Defendants are licensed to practice law in South Carolina and Plaintiff's alleged loss of members.

Plaintiff acknowledges that, to establish a SCUTPA claim, it must demonstrate its own damages and that it may not pursue damages in a representative capacity for losses allegedly sustained by CV timeshare owners. (Dkt. 29 pp. 23, 26.) *See e.g. Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 507 (4th Cir. 1992). But, contrary to these accepted premises, Plaintiff improperly argues in connection with the public interest requirement that Defendants' conduct affects "multiple consumers" and "targets multiple consumers." (Dkt. 29 p. 25.) That argument fails. Moreover, to the extent consumers' interests are concerned, it is very much in the public interest that consumers should have access to the consumer protection services Defendants provide and that Plaintiff seeks to enjoin.

**Conclusion.**

For the reasons set forth herein and in these Defendants' motion to dismiss, the claims against them should be dismissed pursuant to Rule 12(b)(6), FRCP.

**HAYNSWORTH SINKLER BOYD, P.A.**

 s/ Robert Y. Knowlton
Jeffrey Todd Stover, DSC No. 10868
Elliott Condon, DSC No. 13102
134 Meeting Street, 3rd Floor (29401)
Post Office Box 340 (29402-0340)
Charleston, South Carolina 29401
Telephone: (843) 722-3366

Robert Y. Knowlton, DSC No. 2380
1201 Main Street, 22nd Floor (29201-3226)
Post Office Box 11889 (29211-1889)
Columbia, South Carolina 29201
Telephone: (803) 779-3080

*Attorneys for Defendants*

February 19, 2026